**RESPONSIVE ENVIRONMENTS CORP.,**
Plaintiff,

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT, Defendant.**

Civ. No. LR–71–C–98.

United States District Court,
E. D. Arkansas,
Little Rock Division.

Sept. 21, 1973.

Herbert C. Rule III, Rose, Nash, Williamson, Carroll & Clay, Little Rock, Ark., for plaintiff.

John I. Purtle and Henry J. Osterloh, Matthews, Purtle, Osterloh & Weber, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

Paul X Williams, District Judge.

On February 22, 1968 Leroy Gattin, Superintendent of the Pulaski County, Arkansas, Special School District signed a "Lease Purchase Agreement" for a quantity of school library books as itemized in the agreement.

On March 14, 1968 the authorized agent of plaintiff, Responsive Environments Corporation, signed the same in-

strument which provided for payment by the customer school district as follows:

"The customer agrees to make payments as indicated below, but at its option may prepay any balance in full,

| | | |
|---|---|---|
| 1st payment | October 1, 1968 | $28,315.09 |
| 2nd payment | October 1, 1969 | 28,315.09 |
| 3rd payment | October 1, 1970 | 28,315.09 |
| 4th payment | October 1, 1971 | 28,315.09 |

If sales tax is applicable an additional amount of $849.45 shall be paid with each of the above payments."

A copy of the Lease Purchase Agreement is attached to this opinion as Appendix 1.

There is no question but that the district received the books covered by the lease-purchase agreement, distributed them to its various schools, used the books for a year or more and never paid anything for either the books or their use.

When called upon to pay for the books as provided by the contract, the Pulaski County Special School District responded that it considered the contract to be beyond the authority of the Superintendent and to be void and unenforceable. The District caused the books to be gathered up from the various schools and stored in a suitable place and notice to be given to Responsive Environments Corporation to come get them. The defendant cites Beckley-Cardy Inc. v. West Point Special School District No. 3, 209 Ark. 792, 192 S.W.2d 540; Arkansas National Bank v. School District No. 99, 152 Ark. 507, 238 S.W. 630; Brown v. Gardner, 232 Ark. 197, 334 S.W.2d 889; Texarkana v. Friedell, 82 Ark. 531, 102 S.W. 374.

In its brief defendant states:

"There is no doubt but that the Board in the case before the Court could have ratified the contract and could have waived the formalities of the contract. However, all witnesses testified that the Board did not ratify the contract. Mr. Gattin testified that the Board never gave him authority to make the contract. Mr. Payne also testified that he was not given any authorization to enter into the contract. It is obvious that from the beginning, the Board did not intend to enter into the contract and the evidence shows that Mr. Marder contacted the Board and even appeared back before the Board in an effort to get them to accept the contract. In an effort to make the contract acceptable to the Board, the plaintiff sent an amendment to the contract which provided that the Board would not be out any district funds on the books. The stipulation or addendum to the contract made it clear that no school funds would be used and that only Federal Funds approved for such purposes would be used."

Defendant's brief further states:

". . . in the present case we have either a void or voidable contract. I feel it is probably voidable inasmuch as it was not an ultra-vires subject . . .."

and later:

"There was a complete understanding between the plaintiff and Mr. Gattin that if Title II funds were not available, or some other funds from the Federal Government to be used for that purpose, the district would not pay for the books."

The Court finds that neither party to the contract is without fault. The conduct of both is subject to criticism.

The plaintiff's salesman, Mr. Marder, was so anxious to sell his company's books that he oversold his merchandise and carelessly misled the purchasers by his sales pitch. He represented that he had the approval of the State Department, when in truth he and Mr. Payne both had been informed that the lease-purchase form he proposed to use did not meet the requirements of the Arkansas Law and that Title II funds could not be used for payment at that time.

On the other hand, Superintendent Gattin relying upon the advice of Mr. Payne and Mr. Cox was willing to make the deal if federal funds were used to pay for the books. His philosophy was clearly and aptly expressed when he testified that "Federal Funds are free."

In this case we have the plaintiff seeking the pot of gold at the end of the

Federal rainbow and the defendant willing to go along if the acquisition was paid for by federal funds.

Both the present plaintiff and the R.E.C. are wholly owned by Prentice-Hall. During the rainbow days, the plaintiff was acquiring and selling a large number of books—many of which were not the kind or quality desired nor needed by school libraries, but which in this case Mr. Gattin was willing to receive if payment came from the gold at the end of the rainbow.

It is elementary that the business affairs of a school district in Arkansas are by statute entrusted to its board of school directors.

In this case there is no evidence that the contract in question was ever approved or sanctioned by the school board except the action of the board authorizing the Superintendent to execute proper forms to secure federal funds.

Exhibit 11 is a copy of the Record Proceedings of the Pulaski County Special School District of June 11, 1968. A pertinent part thereof being as follows:

"Motion was made by Mr. Chandler, seconded by Dr. Baker and passed unanimously to authorize the Superintendant to sign all federal forms necessary for the Federal Programs in the district."

The Court finds that this action of the board did not authorize Mr. Gattin to enter into the contract here sued on. The Court finds that Mr. Gattin did not have authority to enter into the said contract and further finds that the school board did not ratify or adopt the action taken by Mr. Gattin. On the contrary, the board expressly refused to go along with the venture and changed some of its personnel and later, even the Superintendent himself.

The Court finds that the subject matter was not "ultra-vires"; the board could have ratified the contract, but deliberately chose not to do so.

The Court finds that it was the practice of the defendant district at the time when negotiations were being carried on between Mr. Marder for the plaintiff and Mr. Payne for the defendant to accept the benefit of any and all federal moneys that the school administration could find available; and that the books in this case had already been received, distributed and used extensively before any criticism was voiced.

To say that the board didn't know—or to say that the board ought not to have trusted its own school administrators—will not put the parties back in the same position they were in before the books had been distributed and used.

Furthermore, the use of the books, in however slight degree, was beneficial to the defendant, for admittedly it needed a stronger library program and admittedly, at least a portion of the books were a desirable acquisition.

While the Court finds that both the plaintiff and the defendant are at fault and that no legal contract was made, ratified or consummated, at the same time the Court finds that the conduct of the parties was such that an implied contract arose that required the defendant school district to pay under the theory of *quantum meruit*.

In the case of Dunn v. Phoenix Village, (1963) 213 F.Supp. 936 at page 952, Judge John E. Miller of Arkansas wrote:

"Literally translated, the words 'quantum meruit' means 'as much as he deserved' or 'as much as he deserves,' and is the reasonable value to be given for the services performed. Thus, the basis of a recovery on a quantum meruit claim is that the defendant has received a benefit from the plaintiff which it is unjust for the defendant to retain without paying for it."

"In Carpenter v. Josey Oil Co., (8 Cir. 1928) 26 F.2d 442, the court, be-

ginning at the bottom of page 443, said:

"Quantum meruit refers to that class of obligations imposed by law, without regard to the intention or assent of the parties bound, for reasons dictated by reason and justice. The form of the action is contract, but they are not contracts, because the parties do not fix the terms and their intentions are disregarded. One class of such cases is those where a party wrongfully compels another to render him valuable services, and a promise to pay is implied, because on equitable grounds one ought not to be permitted to keep that which is received without compensation."

Judge Miller's explanation of quantum meruit is uniform in the courts of the United States and further citations are unnecessary.

The Court finds that under the facts and circumstances in this case the plaintiff deserves the option to either have its books back or to receive in payment that sum of money which it deserves.

The next question which addresses itself to the Court is the fair amount which should be awarded to the plaintiff if it elects to take money.

The theory has been considered by the Court that the plaintiff may have bought many of the books in question from warehouse supplies and stock overruns and that they are unsuitable and actually undesirable for use in a public school library. Mrs. Patrick testified at length as to the kind of books furnished by the plaintiff. She considered many titles not to be acceptable. She did not approve some selections of books by the various grade principals, but they got the books anyway. She further testified that she inherited lots of problems as librarian, but just did the best she could; that ordinarily when the district bought books the district got a 38% discount from list and the district only bought approved books from titles approved by the Li-

brarian and less than one-fourth of these books were of acceptable titles.

The district has 23,199 books stored and ready to deliver back to plaintiff. Actually the district has asked for a storage fee since the stored books have deprived the district of the space.

Mr. Lawrence Stone, an executive with the plaintiff, testified that the books which plaintiff sold for $4.00 per volume would be worth only $0.50 per volume if they were returned, and from that would have to be deducted the cost of freight, storage and packaging.

The Court has also considered the fact that the books were received, distributed, used, some exchanged, some written in, some damaged; and also considered the fact that the defendant benefitted by having the books in its library program; that although only a small percent of the books would have been selected by an accredited librarian, nevertheless they were used and could to some degree be used again.

Taking all factors into consideration the Court has the problem of fixing a sum, which under the circumstances the plaintiff deserves to receive, for that is the quantum meruit theory.

After considering all factors the Court finds that plaintiff is entitled to receive $13,500.00 in full settlement for the books which the School District has received from the plaintiff.

However, since this case is being decided on quantum meruit, the plaintiff should have the election of taking its books back at its own expense and the Court will allow 10 days in which the plaintiff may elect to take its books back or have judgment for $13,500.00 in full payment.

No judgment shall be entered until plaintiff has made its election in writing, but if such election is not made within 10 days the Court will consider that plaintiff has elected to receive judgment for $13,500.00 in full settlement and judgment to that effect will be entered. Each party should pay its own costs in this action.

## Appendix 1

Telephone: 201 568-0224

### RESPONSIVE ENVIRONMENTS CORPORATION

*Exclusive Marketing Representatives Edison Responsive Environment*
*Learning System, Manufactured by McGraw-Edison Company*
**200 SYLVAN AVENUE, ENGLEWOOD CLIFFS, NEW JERSEY 07632**

672

PLAINTIFF'S EXHIBIT 1

### LEASE PURCHASE AGREEMENT

| RESPONSIVE ENVIRONMENTS CORPORATION | | School Dist: *Pulaski County Special Dist.* |
| 200 SYLVAN AVENUE | **AND** | Street: *924 Marshall St.* |
| ENGLEWOOD CLIFFS, NEW JERSEY, 07632 | | City: *Little Rock*     Zip: *72202* |
| Hereinafter referred to as the "Company" | | County: *Pulaski*   State: *Arkansas* |
| | | Hereinafter referred to as the "Customer" |

WITNESSETH:

The Company hereby leases to the Customer, and Customer hereby hires of and from the Company for a period of four (4) years commencing on the date hereof the property described below. Customer agrees to make, therefore, the payments indicated below, however, the Customer shall have the right to make full payment for said material at any time. This agreement shall be subject to the terms and conditions on the reverse side of this agreement.

| | | | | |
|---|---|---|---|---|
| — | (1) | THE WORLD AND ITS PEOPLE | 24 VOLUMES | |
| 114 | (2) | MR. BUMBA SERIES | 10 VOLUMES | |
| 108 | (3) | MEDICAL BOOKS FOR CHILDREN | 19 VOLUMES | |
| — | (4) | SCIENCE AND ACHIEVEMENT SET | 12 VOLUMES | |
| 102 | (5) | BOOKS FROM FOREIGN LANDS | 9 VOLUMES | |
| — | (6) | WEBSTER'S ENCYCLOPEDIC DICTIONARY | 1 VOLUME | |
| 102 | (7) | GENERAL JUVENILE BOOKS | 16 VOLUMES | |
| 96 | (8) | IN AMERICA BOOKS | 14 VOLUMES | |
| — | (9) | YOUNG PEOPLES WORLD | 10 VOLUMES | |
| 90 | (10) | FINE ART BOOKS FOR YOUNG PEOPLE | 12 VOLUMES | |
| 93 | (11) | MUSICAL BOOKS FOR YOUNG PEOPLE | 12 VOLUMES | |
| 94 | (12) | CREATIVE SCIENCE SERIES | 12 VOLUMES | |
| 94 | (13) | COMMUNITY OF LIVING THINGS | 5 VOLUMES | |
| 99 | (14) | SPORTS SERIES | 6 VOLUMES | |
| 38 | (15) | DOUBLEDAY ILLUSTRATED LIBRARY | 10 VOLUMES | 38 |
| 115 | (16) | LINCOLN LIBRARY | 1 VOLUME | 39 |
| 52 | (17) | WORLD HISTORY OF THE BIBLE | 5 VOLUMES | |
| — | (18) | COLUMBIA ENCYCLOPEDIA | 1 VOLUME | |
| 114 | (19) | MRS. MOON | 10 VOLUMES | |
| 102 | (20) | REALLY TRULY | 7 VOLUMES | |
| 52 | (21) | *Negro Heritage Library* | 8 volumes | |
| | (22) | *See attached sheet for additional materials* | | |

No. of Schools ...*25*........  No. of Students ...............

SHIP TO AS ABOVE ☐  or: *See attached*
*Instructions*

INVOICE TO AS ABOVE ☒  or:

L-6371

VERIFICATION: NAME *Mr. C. Payne*     TITLE *Asst Supt*   AREA CODE: *501*, Tel: *FR 4-1241*

PAYMENTS: The Customer agrees to make payments as indicated below, but at its option may prepay any balance in full.

| Payment | Payment Date | Year | Amount | If sales tax is applicable, an additional amount of |
|---|---|---|---|---|
| 1st Payment | *Oct 1* | 1968 | $28,315.09 | $ *844.75* ......... shall be paid with each of the above |
| 2nd Payment | *Oct 1* | 1969 | $28,315.09 X | payments. |
| 3rd Payment | *Oct 1* | 1970 | $28,315.09 X | |
| 4th Payment | *Oct 1* | 1971 | $28,315.09 X | REPRES. SIGNATURE *Darrell Woods* |

IN WITNESS WHEREOF THE PARTIES HERETO SET THEIR HANDS

FOR THE COMPANY — BY: 

FOR THE CUSTOMER — BY: 076:

| FOR THE COMPANY | FOR THE CUSTOMER |
|---|---|
| SIGNATURE: *James Nickolson* 1: 63 018 | SIGNATURE: *Jessie Gatten* |
| DATE: *3/14/68* | DATE: *Feb 22, 1965* |
| PLACE: ENGLEWOOD CLIFFS, NEW JERSEY | PLACE: *Little Rock, Arkansas* |
| | TITLE: *Superintendent* |

*DISTRICT TO RECEIVE $15,000 - WORTH OF FREE BOOKS - TO BE PICKED BY DR. BUMEL.*
*672*

## TERMS AND CONDITIONS

(a) For the period of the initial lease, any reasonable loss or damage to the material beyond Customer's control shall result in the Company replacing the lost or damaged property.*

(b) After the initial lease period, the Customer shall have the option of leasing up to a like number of the same sets of books for an additional period of four (4) years. For each set of books then leased, the Company shall supply a like number of the same set of books without charge. The foregoing offer is premised on the then availability to the Company of the same books. If the same books are not then available to the Company, Customer will then have the option to select up to a like number of other similar sets of books available at that time.

(c) Title to the material shall pass to the Customer in relation to the proportion of monies paid to the Company. In the event Customer complies with all the provisions of this lease, the Company will execute a bill of sale to the Customer of all its rights to the property as evidence of transfer of title.

(d) In the event the Customer defaults in the payment of any amount due or to become due under the terms of this lease or defaults in performance of any of the terms or conditions thereof, all the Customers rights hereunder shall be terminated and the Company shall become entitled to possession of all the material excepting that for which title passes to Customer pursuant to the provisions of paragraph (c) hereof and to retain all rentals.

(e) This Lease and all rights of Company hereunder including but not limited to rentals may be assigned by Company, in which event assignee shall have all rights of the Company hereunder but none of the obligations and Company shall not be deemed assignee's agent for any purpose unless specifically authorized to act as such and Customer agrees to pay all rentals to Company or its assignee, on due dates.

(f) At Company's request, Customer shall sign and deliver to the Company any document Company believes will protect the Company's ownership interest in the material under the Uniform Commercial Code as adopted by the State of New York, New Jersey, or any other State where the property is to be located. The execution and/or filing of any such document shall not alter the parties' respective interests in and rights to the property.

(g) This Agreement shall, in every respect, be binding on the parties hereto, and their respective successors and assigns, and shall be binding upon Company only when accepted by the Company at its main office in Englewood Cliffs, New Jersey.

(h) Customer acknowledges receipt of an exact copy of this Agreement.

* Nominal charge for shipping and handling replaced volumes.

## RESPONSIVE ENVIRONMENTS CORP.

200 SYLVAN AVENUE
ENGLEWOOD CLIFFS, N. J.

## ADDITIONAL MATERIALS

| C | TITLE OF SET | | NC |
|---|---|---|---|
| | YOUNG COUNTRY MOVES FORWARD | 21 VOLUMES | |
| | ANDELS VOCATIONAL | 20 VOLUMES | |
| | I WANT TO BE | 18 VOLUMES | |
| | YOUNG PEOPLES STORY OF HERITAGE | 15 VOLUMES | |
| | ENCHANTMENT OF AMERICA | 12 VOLUMES | |
| | TRUE BOOKS OF SOCIAL STUD. | 13 VOLUMES | |
| | TRUE BOOKS OF SCI. LIB. | 12 VOLUMES | |
| | LIONS PRIDE JUV. | 12 VOLUMES | |
| | GIRLS CAREER FICTION | 10 VOLUMES | |
| | 20TH CENTURY DICT. | 1 VOLUME | |