### CARPENTER v. JOSEY OIL CO.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1928.

No. 7917.

1. Mines and minerals ⬲109—Oil well driller, agreeing to examine machinery, casing, etc., and report defects, or be deemed to have assumed all risks, assumed all liability for hidden defects in casing.

Oil well drilling contract, requiring driller "to carefully examine all machinery, casing," etc., furnished by other party, and notify latter of defects, failing in which he "shall be deemed to have assumed all risks and all responsibility for any mishap" in drilling because of failure in such machinery, casing, etc., bound him to inspect casing at his own risk, and assume all liability for hidden defects.

2. Work and labor ⬲14(3)—Driller cannot abandon express contract to drill oil well to certain depth and recover on quantum meruit for labor furnished.

Oil well driller could not abandon his express contract, under which no part of contract price was to become due or payable until well was drilled to certain depth, and recover on quantum meruit for reasonable value of his labor, which was valueless to defendant.

3. Work and labor ⬲1—"Quantum meruit" refers to noncontractual obligations imposed by law, without regard to parties' intention or assent, for reasons dictated by justice.

"Quantum meruit" refers to class of obligations imposed by law, without regard to intention or assent of parties bound, for reasons dictated by reason and justice; such obligations

not being contracts though form of action is contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Quantum Meruit.]

4. Contracts ⬲1—Court cannot relieve party from plain provisions of harsh contract.

A court cannot relieve a party from the plain provisions of a contract because it is a harsh one.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Action by Walter M. Carpenter against the Josey Oil Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Woodson E. Norvell, of Tulsa, Okl. (J. A. Denny and Linn & Spradling, all of Tulsa, Okl., on the brief), for plaintiff in error.

A. J. Biddison, of Tulsa, Okl. (Harry Campbell, Valjean Biddison, and John H. Cantrell, all of Tulsa, Okl., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

SYMES, District Judge. The defendant in error, the oil company, engaged Carpenter, plaintiff in error, to drill an oil well on certain described property. The written contract, hereafter referred to, set forth the terms of the engagement in great detail, in an evident attempt to cover every eventuality that might arise.

Carpenter brought this action, and alleges that he proceeded with the work and drilled until a depth of 2,700 feet was reached, at which point he was ordered by the oil company to set a string of 8¼-inch casing furnished by it; that before running said casing he carefully examined the same, and no defects were found, the same appearing from said examination to be good and safe casing, and sufficient for the use to which the same was to be put; that there were, however, certain latent defects in said casing, which could not be ascertained or discovered by a careful examination thereof; that, while engaged in lowering the casing into the well, the same, on account of the said latent defects and without any fault of the plaintiff, broke, and as a result further drilling operations were rendered impossible. Plaintiff sues on quantum meruit for the fair and reasonable value of his services, to wit, $11,192.75. There is no allega-

tion of breach of the contract or negligence on the part of the oil company.

A demurrer to the complaint was sustained by the lower court. The correctness of that ruling is the one question presented here, and requires a construction of the contract exhibited as part of the plaintiff's petition. It required the defendant, the oil company, to furnish a standard rig, and "to furnish all necessary casing on the ground for the drilling of said well, as well as other supplies." It likewise agreed to pay when the well was completed and accepted in the Wilcox sand—found in that vicinity at around 3,750 feet—the sum of $4 per foot for each foot drilled; it was further provided that, if the defendant should stop the drilling, and accept the well as completed in or through "the present producing sand, found in Hulsey No. 1 at 2,903 feet deep, then it shall pay at the rate of $2.75 per foot for each foot drilled; but no part of the contract price for such drilling is payable, due, or earned until said well is complete to the depth first above stated, unless the same is accepted by first party at a lesser depth."

The plaintiff, Carpenter, agreed to furnish a complete drilling outfit and tools, and to drill the well to the depths mentioned, and properly place all casing in the well at his expense, and furnish all labor, tools, etc. In addition Carpenter—

"Second party agrees to carefully examine all machinery, casing, rig and other appliances to be furnished said well by first party, and if any defect be found therein, sufficient to make the use of such machinery, casing, rig, or other appliances unsafe, shall immediately notify the first party in writing of such defects and the first party shall at once replace the article so found defective, with a good and safe one; but if the second party shall not make such examination, or shall not so report any defect in said machinery, casing, rig or other appliances, second party shall be deemed to have assumed all risks and all responsibility for any mishap which may occur in the drilling of said well, by reason of a failure in such machinery, casing, rig, or other appliances." (Italics ours.)

This clause was strengthened by the following: "All risk and damage to tools, rig, casing, well, or equipment shall be assumed by the party of the second part at all times until all the work to be done under this contract is fully and finally completed and the well is accepted as completed by the first party."

[1] Assuming the allegations to be true, the question is: Which party was liable for latent defects? The plaintiff in error argues that the paragraph supra, requiring inspection on his part, made it his duty to examine the casing before use, and report any defects discovered, and that that was all required of him; that he could not be held to any degree of responsibility for any defects which such an examination did not disclose; further, that these terms presupposed that the oil company would, at its peril, furnish safe casing, and that failure so to do would render the oil company liable for the value of the plaintiff's services, in case drilling became impossible due to the breaking of latently defective casing.

Several cases are cited in support of that proposition, the leading and typical case being Hickman v. Union Oil Co., 106 Kan. 555, 189 P. 391. The contract there construed contains word for word the same clause as in the case at bar, with the addition of a provision specifically making the oil company, and not the contractor, responsible for any defects impossible to detect, which may occur in the drilling of such well, by reason of a defect in the machinery, rig, or casing. This language, it seems to us, clearly distinguishes it from the instant case.

The contracts construed in the other cases cited by plaintiff in error do not contain such stringent provisions as we have referred to, the language of which, taken together, compels the conclusion that the contractor was bound to inspect the casing at his own risk, and assume all liability for hidden defects, especially the clause which says that, if the contractor shall not so report any defects, etc., he shall "be deemed to have assumed all risk and responsibility for any mishap which may occur in the drilling," etc. This clearly covers the eventuality that occurred.

[2] It was the intention of the parties that the plaintiff as an independent contractor would drill a well to a certain depth, and that until such undertaking had been fully performed no part of the contract price would become due or payable. The action is on quantum meruit for the reasonable value of labor furnished by the plaintiff. But we are cited to no authorities, nor have we found any, which entitled the plaintiff to abandon an express contract and recover on quantum meruit for labor which was valueless to the defendant.

[3] Quantum meruit refers to that class of obligations imposed by law, without regard to the intention or assent of the parties

bound, for reasons dictated by reason and justice. The form of the action is contract, but they are not contracts, because the parties do not fix the terms and their intentions are disregarded. One class of such cases is those where a party wrongfully compels another to render him valuable services, and a promise to pay is implied, because on equitable grounds one ought not to be permitted to keep that which is received without compensation. But in the case at bar the oil company has not been enriched or benefited. Further, where the relations of the parties can be ascertained from an express contract as explicit as the one at bar, it is not necessary to resort to this legal fiction. [4] The contract is perhaps a harsh one, but we are not permitted to relieve the contractor from the plain provisions thereof.

The demurrer was properly sustained, and the judgment of the trial court should be, and is, affirmed.