Allen H. Blackledge and Ethel B. Dennis appealed from an order and final decree of the county court of Garfield county allowing a claim in the sum of $3,400 filed by H.H. Champlin against the estate of their aunt, Nettie Conkling, deceased. The district court upon hearing de novo found that claimant paid to Nettie Conkling, from October, 1937, to the date of her death, October 19, 1940, the amount of money claimed; that it had not been repaid; that the facts and circumstances surrounding the payments, which were made in amounts of $100 per month for necessities, constituted an implied contract for repayment. Judgment was rendered accordingly, from which an appeal by the nephew and niece of decedent has been taken to this court.
It is contended that under the facts stated no contract between H.H. Champlin and decedent arose either by implication of law or fact. We consider the former. It is a constructive or quasi contract, which in fact is a mere fiction, but imposed by law to afford a remedy in cases where a duty devolves upon a party as a matter of law and irrespective of intention.
This court is committed to the doctrine (First National Bank of Okmulgee v. Matlock et al., 99 Okla. 150, 226 P. 328, 36 A. L. R. 1088) that:
"A quasi or constructive contract is an implication of law. An implied contract is an implication of fact. In the former the contract is a mere fiction imposed in order to adapt the case to a given remedy. In the latter the contract is a fact legitimately inferred. In one the intention is disregarded; in the other it is ascertained and enforced. In one the duty defines the contract; in the other the contract defines the duty."
The relations are remedial in assumpsit and hence contracts arising from facts and circumstances independent of agreements or presumed intention; whereas in express and implied contracts the intention of the parties is the essence of the transaction. The duty is not infrequently founded on the doctrine of unjust enrichment. 6 R. C. L. 588.
The facts presented are not disputed. It is admitted by plaintiffs in error (page 20, brief) that Mr. Champlin paid to the deceased in her lifetime $100 per month under the misapprehension that she was in necessitous circumstances. While it is true the record is silent as to any misstatement on the part of Mrs. Conkling that would render her guilty of fraud in representing her true financial condition, nevertheless the facts are such as to justify a conclusion of nondisclosure on her part and to warrant the view of the learned trial judge that payment was made by Mr. Champlin and received by Mrs. Conkling under a misapprehension as to her true financial condition. When a payment was made Mrs. Conklin had on deposit in the bank, of which payer was president, the sum of $3,634.74. When the last payment was made her deposit for $3,555.13. All payments sought to be recovered were made for support and maintenance within a three-year period prior to her death. Nettie Conkling was not related to the claimant. She was old and blind and had been a widow for 25 years. In the absence of relatives, she was physically dependent upon friends. She wanted Mr. Champlin "to take care of things and considered that everything she had belonged to him." She wanted him to get her affairs straightened out. Mrs. Conkling owned a farm in Kansas not far distant from an enormous gas field. She offered to give this farm to Mr. Champlin, but he declined and made the suggestion that the farm be transferred to another of her friends, and that was done. There may have been a variety of reasons to actuate the claimant in declining a deed to the farm. None were expressed.
After the death of Mrs. Conkling, Mr. Champlin wrote a letter to Honorable *Page 81 
James E. Watson, United States Senator. It was introduced in evidence by appellants. It discloses that claimant's acts were on account of a family friendship with deceased and Mrs. Conkling's destitute circumstances. Because of infirmity she had ceased to earn her living as a house mother of a fraternity at the University of Oklahoma. According to this letter the claimant would have expected reimbursement from his advances in the event deceased had realized profits from the natural resources of her farm in Kansas; but, to the contrary, he did not actually expect to get the money back. The advancements constituted neither a gift nor an investment in the nature of a business venture. They were made under the belief that the recipient was destitute and consequently in need of charity. Had the beneficiary been possessed of all her faculties, perhaps she could have disclosed to her benefactor her true financial status. And while it is true that as president of the depository bank the claimant might have learned of this, he did not. There is not present in this case any mutual intention between the parties to enter into a contract specifically relating to the payment or repayment of any money. On the other hand, the deceased wanted Mr. Champlin to take care of her property and straighten out her affairs, and this, in a measure, he did. Inman v. Stephenson, 170 Okla. 548,40 P.2d 1107; Gladys Belle Oil Co. v. Clark et al., 147 Okla. 211,296 P. 461; 15 O. S. 1941 § 133. In assuming, to a limited extent, control over the affairs of decedent, such as advising her in reference to disposition of her property, the advancements were made. The basis of recovery allowable is under the doctrine of unjust enrichment. As stated in Restitution, chap. 2, sec. 9, page 36, American Law Institute:
"Where innocent misrepresentation or nondisclosure is the sole ground for restitution, restitution is granted only if the misrepresentation or nondisclosure was material.
"Where mutual mistake is the sole ground for restitution, restitution is granted only if the mistake was basic."
Moreover, as stated in section 26, Id.:
"A person is entitled to restitution from another to whom gratuitously and induced thereto by a mistake of fact he has given money if the mistake was caused by fraud or material misrepresentation, or . . . as to some other basic fact. . . .
"A person who has transferred money to another without intention to make a gift thereof may be entitled to restitution although at the time of transfer he manifested that the money was transferred as a gift."
The reason underlying the latter rule is that such a transaction involved no manifestation of intention to make an agreement based upon consideration. Therefore, the payee has neither given nor promised anything in return. Consequently, mere manifestation of intention to make a gift is not controlling, as intention would be in the case of agreements based upon consideration, but the payer is entitled to restitution if, in finality, it appears that payments were not intended to be gifts. Disclosures by the letter introduced and the claim filed are convincing that in finality no gift was intended.
Judgment affirmed.
CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.