**PARKHILL TRUCK COMPANY, a Delaware corporation, Plaintiff in Error,**

v.

**C. Eugene REYNOLDS, Defendant in Error.**

No. 38966.

Supreme Court of Oklahoma.

Feb. 28, 1961.

Doerner, Stuart, Moreland, Campbell & Saunders, Tulsa, for plaintiff in error.

O. O. Leach, Tulsa, for defendant in error.

BERRY, Justice.

Parkhill Truck Company, defendant below, seeks corrective relief from a judgment of the trial court entered upon a jury verdict in favor of plaintiff, C. Eugene Reynolds. The principal question presented for our determination is whether there is sufficient evidence to establish that defendant, as a lessee of a tractor-trailer, was legally liable for unpaid wages claimed by plaintiff for labor performed in operating the leased vehicle. Defendant urges that its demurrer to the evidence and motion for directed verdict should have been sustained, and asserts that plaintiff rendered his services while in the employ and under exclusive control of lessor who, as an independent contractor, was solely responsible for his compensation.

The evidence discloses little or no dispute as to the material facts. At the suggestion of defendant's dispatcher, plaintiff, a truck driver, offered his services to one Noah Orr. The latter was the owner of a tractor-trailer which was then being leased by the defendant, Parkhill. After a very brief discussion concerning plaintiff's qualifications and experience, both men proceeded to defendant's office in Tulsa for a conference with defendant. Prior to the

conference there was no understanding between plaintiff and Orr as to the manner in which plaintiff was to render his services, the amount of compensation he would receive, or by whom he would be paid. At the conference defendant's dispatcher "approved" plaintiff on Orr's request as a driver of the leased vehicle and issued to him "an employment card". The dispatcher informed plaintiff that Parkhill would pay him in wages an amount equal to 20% of 72.5% of "gross revenue" realized from freight hauled on the leased vehicle. Apart from this remuneration, the dispatcher explained, plaintiff would receive money to buy gasoline, oil and parts and to pay for repairs, meals and lodging. Plaintiff was to take orders from the dispatcher and report daily by telephone for instructions. The authority on the part of the dispatcher to make the outlined statements is not disputed.

Under a written lease between Orr and Parkhill the former was entitled to 72.5% of "gross revenue earnings" on his equipment and was to defray all expenses incident to its operation. The latter was vested with the exclusive control, possession and management of the tractor-trailer which, while driven by plaintiff, bore Parkhill's insignia and markings. It was Parkhill's duty to compensate the driver for his services and withhold taxes from the wages so paid. Parkhill also provided the driver with coverage under the Workmen's Compensation Law. The mode of direction and supervision of plaintiff's work was identical to that exercised over drivers of Parkhill's own equipment.

It was Parkhill's voluntary practice to provide all expenses incident to the operation of leased equipment and charge the aggregate amount so advanced against credits accumulating to the lessor's account from his share of gross receipts. Orr's truck was in a run-down condition. It required constant expensive repairs. At the beginning of August, 1958, the credits were completely exhausted and Orr became indebted to Parkhill for about $558. Plaintiff drove the truck from June 30, 1958, to August 8,

1958. On the latter date Parkhill declined to advance any additional sums for repair of Orr's vehicle. Unable to secure funds necessary to place the tractor in an operable condition, plaintiff abandoned the disabled equipment near Memphis, Tennessee, after notifying Parkhill's dispatcher of its whereabouts.

It is undisputed that during the period of time plaintiff operated the vehicle the share of "gross revenue" which constituted his wages amounted to $242.48. Of this sum Parkhill paid him $38.46 (less taxes withheld) by check dated July 15, 1958, but refused to remit the balance, which, plaintiff was told, would be retained to "reduce" the debit on Orr's account. After the close of 1958, plaintiff received a withholding statement from Parkhill showing the sum of $242.48 as the "total wages paid before payroll deductions". This action was instituted to recover the balance of $204.02.

■ In passing upon a demurrer to plaintiff's evidence and motion for a directed verdict, the trial court must adopt that view of the proof adduced which is most favorable to the plaintiff. Kaiser v. Fadem, Okl., 280 P.2d 728. Measured by this test, the outlined evidence amply supports the inference that plaintiff rendered the services in reliance upon a specific antecedent understanding with, and an express promise of, Parkhill to pay him as wages the stipulated percentage of gross receipts realized in the operation of the leased truck.

■ A contract, express or implied, forms the basis of, and is generally essential to, recovery for work and labor performed. Even in the absence of an antecedent agreement, the law will raise an implied contract to pay for services rendered when they were performed under such circumstances as to give the recipient thereof some reason to think they are not gratuitous, not performed for some other person, but with expectation of compensation from the recipient to whom the service is beneficial. If one merely accepts or knowingly avails himself of the benefit of services ren-

dered for him without his authority or request, he becomes liable therefor. It therefore follows that an obligation arises when, as in the instant cause, services beneficial to the party, are procured with his knowledge, consent and approval and upon his express promise to pay compensation therefor. See Popplewell v. Gregory, 199 Okl. 681, 189 P.2d 941; Staten v. McMahan, Okl., 337 P.2d 440.

■ In the course of his testimony plaintiff related that when he abandoned the truck in Memphis, Tennessee, on August 8, 1958, he had in his possession approximately $70 in expense money furnished by Parkhill. Defendant urges that plaintiff should be required to "account" for this fund. In his answer and cross-petition (for attorney's fee) no setoff was averred. At the trial defendant specifically disclaimed any interest in the money advanced plaintiff for operational expenses and maintained that this was a matter between plaintiff and Orr. The argument presented now is therefore contrary to defendant's theory below. The verdict did not allow any offset from the amount prayed. There is some evidence in the record from which the jury could have found that the money retained by plaintiff was used by him to defray the expenses of his return trip from Memphis. In any event, a party will not be permitted to either prevail on appeal or seek review on a theory which was not presented to the trial court. Hayes v. Childers, Okl., 312 P.2d 865; Smiley v. Jaggers, Okl., 327 P.2d 652.

■ As we understand defendant's brief, two arguments are advanced. It is urged: (a) plaintiff and Orr were "joint adventurers"; (b) while rendering services for which wages are sought, plaintiff remained under the exclusive direction and control of Orr, his general master, who was an independent contractor. We find these theories inapplicable to the facts. There is no showing of any contractual relation between plaintiff and Orr. Under the terms of the lease Orr was not obligated to procure and maintain an operator for the leased vehicle,

nor was he required to provide control and supervision over its movements. To the contrary, the evidence is clear that Parkhill acquired the exclusive right to direct, control and manage the operation of the tractor-trailer. The authorities cited by defendant involve either liability under the doctrine of respondeat superior for negligence of an operator furnished with a leased vehicle, or proceedings under the Workmen's Compensation Act which provides its own definition of the terms "employer" and "employee". The existence of an obligation to pay wages is not exclusively controlling in determining whether a given master, general or special, is responsible for the acts of a servant or for compensation to an injured workman. These decisions are therefore manifestly inapplicable to actions, such as the present, for recovery of wages which rest solely upon a contractual liability, either express or implied. Compare Roberts Truck Service v. Singleterry et al., Okl., 357 P.2d 217; A. K. McBride Const. Co. v. Arkhoma Steel Erection Co., Okl., 348 P.2d 541; King's Van & Storage Co. v. Criner, Okl., 301 P.2d 1015; annotation in 17 A.L.R.2d 1388.

It is next urged that the provisions of 40 O.S.Supp.1955 § 165.9(b) declaring that in an action to recover unpaid wages the trial court may allow an attorney's fee, are unconstitutional in that they deny like relief to the employer, if he should be the prevailing party. Hence, it is argued that the statute singles out the employer for treatment which is invidiously discriminatory and violative of the equal protection clause of the Federal Constitution. Defendant cites Chicago, R. I. & P. R. Co. v. Mashore, 21 Okl. 275, 96 P. 630, 17 Ann. Cas. 277; Oligschlager v. Stephenson, 24 Okl. 760, 104 P. 345.

The cited statute provides:

"The court in any action brought under this Subsection may, in addition to any *judgment awarded to the plaintiff or plaintiffs, defendant or defendants,* allow costs of the action, including costs or fees of any nature, and

**1068**

reasonable attorney's fees." (Emphasis ours)

In passing upon the validity of a statute, it is the duty of this Court to adopt, whenever fairly possible, a construction which will avoid grave doubts or uncertainty as to its constitutionality. Consolidated Cut Stone Co. v. Seidenbach, 181 Okl. 578, 75 P.2d 442.

The quoted enactment, when read in its entirety, plainly contemplates an allowance of counsel fee to that party, whether plaintiff or defendant, to whom a judgment is "awarded". The term "awarded", as used in the context, should therefore be construed as synonymous with the word "rendered". The language of the statute under consideration bears a substantial similarity to that found in 42 O.S.1951 § 176, which is a cognate provision applicable to actions for foreclosure of liens. The enactment last cited was held constitutional by this Court when assailed upon grounds identical to those argued in this cause. Ardmore Hotel Co. v. J. B. Klein Iron & Foundry Co., 104 Okl. 125, 230 P. 734, and Keaton et al. v. Branch, 104 Okl. 287, 231 P. 289.

We conclude that the provisions of 40 O.S.Supp.1955, § 165.9(b) afford the prevailing litigant, be it plaintiff or defendant, an equal right to an allowance of counsel fee.

Lastly, defendant complains that the attorney's fee of $300 allowed plaintiff by the trial court is excessive.

While in determining a reasonable attorney's fee, the trial court may and should consider the quantum of work performed, the amount of time required therefor, the difficulties encountered in course of litigation and the complexity of questions involved, the fee allowed to counsel for the prevailing party must nevertheless be measured to some extent, by the amount of his recovery. Woods v. Levine, Okl., 311 P.2d 204. In so holding we do not pronounce a rule that in all instances the fee awarded must bear some fixed relation to the recovery, as instances may doubtless

arise where the amount in controversy is so negligible that it would not provide a reasonable criterion for gauging the value of legal services rendered. This case does not fall in the latter category. We are of the opinion that the sum of $175 constitutes a reasonable compensation for all services rendered by plaintiff's counsel in the trial court. An additional fee of $125 is hereby awarded for services on appeal, and the trial court is hereby directed to fix the fee in said amounts.

Judgment as modified affirmed.