**AMERICAN AUTOMATED THEATRES, INC., an Oklahoma corporation, Appellant,**

v.

**HUDGINS, THOMPSON, BALL & ASSOCIATES, INC., et al., Appellees.**

**No. 45999.**

Court of Appeals of Oklahoma, Division 2.

Oct. 30, 1973.

Released for Publication by the Court of Appeals, Nov. 29, 1973.

Larry D. Patton and Nan J. Patton, To-merlin & High, Oklahoma City, for appellant.

Kenneth J. Wilson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for appellees.

BACON, Judge.

Appellant engages in developing, equipping and franchising small movie theaters known as "mini-twin" theaters. Appellees were developing a shopping center in Norman, Oklahoma, and in March of 1970, contacted appellant regarding the possible installation of a mini-twin theater in the new center. The parties entered into a leasing arrangement which terminated upon appellees' failure to secure proper zoning from the city of Norman. Several months later appellees contacted appellant assuring it that the necessary zoning could be secured. Thereafter the parties had numerous meetings and negotiations relating to the installation of a mini-twin theater at the Norman project. Appellant's president, J. Cooper Burks, negotiated with one Paul J. Goddard, who was a representative of appellees herein, in Mr. Goddard's office.

At one such meeting, Burks and Goddard negotiated an agreement, and Goddard had one of his employees and Burks go into a room where they would not be disturbed and "go over the points that they [appellees] wanted more leniency on." This the employee and Burks did, with that meeting ending with the understanding that appellees would have the agreement typed and sent to appellant. When appellant received it there were minor changes that they "hadn't discussed." In his deposition, Burks, in answer to the question, "Did you accept all of the changes?" replied, "Yes. I *would have* accepted that just as it—as it was. However, I wanted to talk to them about [it], and we never got down to the point on it . . . ." (emphasis ours)

After several subsequent meetings an agreement was still not executed, and several months later appellees "came up with drastic changes" to which appellant reacted by saying it "could not possibly enter into that kind of an agreement." Thereafter communications between appellant and appellees broke down and appellees contracted elsewhere for the theater.

Appellant filed suit alleging two causes of action, to-wit: (1) "for lost franchise fees . . . [and] lost management fees caused by the Defendants' wrongful breach and misrepresentations herein," and (2) for "judgment against Defendants in the sum of $25,000.00, being that amount by which Defendants have been unjustly enriched . . . ."

Both parties submitted affidavits and thereafter the trial court sustained appellees' motion for summary judgment. Appellant now appeals that ruling asserting some six propositions of error.

Appellant's propositions include arguments that there was error in finding that (1) there was "no material dispute as to the ultimate facts involved," (2) "there had been no novation" of the original lease, (3) appellees "were not estopped to assert the statute of frauds," (4) "the statute of frauds applied in a situation in which a contract could be terminated and fully performed within less than one year," (5) "there was no moral consideration to bind the parties," and (6) appellant "was not entitled to recover on the basis of *quantum meruit* for the reasonable value of service rendered." (emphasis ours)

■ We have carefully examined appellant's propositions of error and the record before us, and find appellant proceeded on several theories, one of which was that there was an "express" contract entered into by the parties. The record is fairly clear that the parties had not had a meeting of the minds to the extent that it could be said that a contract had been reached. We think Mr. Burks himself fairly classified the situation when asked whether he believed an agreement had been consummated. His answer was, "Well, I—I—I believed from that time forward that I just spoke of that we certainly *had an agreement to agree*." (emphasis ours)

An "agreement to agree" standing alone is too vague to be enforceable. We therefore find that the parties did not enter into a contract that could be enforced. Thus the propositions dealing with novation, statute of frauds and moral consideration become irrelevant.

It is undisputed that appellant never told appellees that it expected to be compensated for services rendered in the event that a franchise agreement was not consummated. Appellant relies upon the premise that it never sold its services because "the only time we render these services are to franchisees." Mr. Burks testified, "The only time we give plans to a franchisee is after we have—normally, after we have an executed franchise agreement." Here, there was no executed franchise agreement.

Another theory pleaded was that appellees were unjustly enriched by appellant's services and should be compensated therefor. Appellant, however, argues "quantum meruit" in its brief. We feel the single case cited by appellant (Parkhill Truck Co. v. Reynolds, Okl., 359 P.2d 1064 (1961)) to support an argument on "quantum meruit" is not applicable because in Parkhill there was an express promise to pay, and no such promise was made in the present case. We therefore will look to the pleadings as the trial court did, and examine the record to determine if such are sufficient to support a cause for unjust enrichment. The Oklahoma Supreme Court in McBride v. Bridges, 202 Okl. 508, 215 P.2d 830 (1950) quoted with approval "46 Am.Jur. page 99" which reads as follows:

"Unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss."

Volume 66 Am.Jur.2d Restitution and Implied Contracts § 7 (1973) reads as follows:

"Under proper circumstances, where an express contract is unenforceable the law may imply a promise. Thus, the mere fact that the parties have attempted to make an express contract but have not succeeded in making it enforceable with respect to some of its terms does not prevent the implication of a promise to pay for benefits conferred thereunder. The generally recognized doctrine is that the fact that a contract is invalid because the minds of the parties did not meet as to some of the essential terms thereof, either because of a mutual mistake or uncertainty therein, does not require that a party thereto who furnishes something to the other party, relying upon the terms as he understood them, be without a remedy. In such case a promise to pay the reasonable value of the benefits is implied. Nor is the implication of a promise necessarily precluded by the mere fact that an enforceable

contract had previously been entered into by the same parties. Under some circumstances the contract may be treated as having been abrogated, and a recovery may be had on an implied promise to pay for benefits conferred thereunder. A party may be bound by an implied promise when he has made an express contract which has been rescinded or abandoned."

See also Conkling's Estate v. Champlin, 193 Okl. 79, 141 P.2d 569 (1943); Macsas v. Fishencord, 190 Okl. 407, 124 P.2d 388 (1942).

■ We find the record before us shows appellant and appellees had negotiated extensively over a rather lengthy time period, and at one point in time reached a stage where except for a "few minor details" there would have been a binding contract. Then negotiations abruptly broke down which resulted in appellees installing a theater on their own, after having received the benefit of appellant's knowledge, time and services. Appellant thus alleged appellees were unjustly enriched by these benefits, and appellees denied they were unjustly enriched by them. In these circumstances there exists a material issue which would prevent summary judgment. A determination of the issue could only be made after hearing the parties' evidence as to how much appellant's services benefited appellees, if any, and the value thereof. We are therefore compelled to affirm the case as to the first cause of action, reverse as to appellant's second cause of action and remand the case to the trial court with instructions to proceed in a manner consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

NEPTUNE, J., concurs.

BRIGHTMIRE, P. J., concurs in result.

BRIGHTMIRE, P. J. (concurring in result).

I think rejection of appellant's "quantum meruit" argument because of the inadequacy of Parkhill Truck Co. v. Reynolds, Okl., 359 P.2d 1064 (1961) is not justified. "Quantum meruit" is but a restricted application (to labor and service performance) of the moral philosophy underlying the equitable doctrine of "unjust enrichment" originating with the ancient common law action of *assumpsit*—an implied promise of defendant to pay plaintiff what he reasonably deserves for work and labor performed for the former. 3 Black's Commentaries 161; Viles v. Kennebec Lumber Co., 118 Me. 148, 106 A. 431 (1919). It was put another way in Carpenter v. Josey Oil Co., 26 F.2d 442 (8th Cir. 1928)—a case originating in the United States District Court for its Northern District of Oklahoma: "Quantum meruit refers to that class of obligations imposed by law, without regard to the intention or assent of the parties bound, for reasons dictated by reason and justice. The form of the action is contract, but they [sic] are not contracts, because the parties do not fix the terms and their intentions are disregarded. One class of such cases is those where a party wrongfully compels another to render him valuable services, and a promise to pay is implied, because on equitable grounds one ought not to be permitted to keep that which is received without compensation."

Here it is alleged appellees received beneficial services which unless they pay for them, will result in unjust enrichment. It is to be noted that mere bestowal of benefits is not sufficient to invoke the attention of equity. To be unjust the enrichment must have occurred under circumstances which would warrant a fact finder conclusion that some unfair advantage has been taken giving rise to an implied promise to pay— the same primal basis underlying *assumpsit*, the action at law.

In the case at bar it will not be possible to determine whether or not an implied promise on the part of appellees to pay appellant probably exists until all the evidence is adduced at trial. And this is true whether the action be considered legal or equitable in nature.