**UNITED STATES COURT OF APPEALS**
**Filed 4/24/96**
**TENTH CIRCUIT**

CHOLIER, INC.,

      Plaintiff - Appellee,

    v.

TORCH ENERGY ADVISORS, INC. and
SEARCH DRILLING CO.,

      Defendants - Appellants.

No. 95-6177

W.D. Oklahoma

(D.C. No. CIV-93-1449-L)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges.

Cholier, Inc. brought this diversity action against Torch Energy Advisors, Inc. ("Torch Energy") and Search Drilling Co. ("Search"), alleging claims for breach of contract and unjust enrichment, together with various related tort claims. At the close of Cholier's case in chief, the defendants (collectively "Torch") moved for judgment as a matter of law on all claims, at which time the district court granted the motion on all Cholier's tort claims except for the fraud claim. At the close of all the evidence, the court

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

granted judgment as a matter of law on the fraud claim, and it submitted the claims for breach of contract and unjust enrichment to the jury. The jury found against Torch on the breach of contract claim. Torch appeals the district court's denial of its post verdict motion, pursuant to Fed. R. Civ. P. 50 and 59, for judgment as a matter of law or alternatively for a new trial on the contract claim. Torch contends that the evidence conclusively establishes that there was no agreement between the parties on essential contract terms and that, in any event, the damages evidence was too speculative and imprecise. Alternatively, Torch argues that the jury award of damages was against the weight of the evidence. We affirm the district court's denial of Torch's motion for judgment as a matter of law. We reverse the district court's judgment denying Torch a new trial, and we remand and order a remittitur of damages, or a new trial on damages if Cholier refuses the remittitur, as set forth below.

## BACKGROUND

Cholier is an Oklahoma company that provides consulting services to owners of oil and gas properties. Torch Energy is a Houston based company that manages oil and gas properties for investors. Search is a corporation purchased by Torch Energy that owned and operated oil and gas properties in Oklahoma.

This action involves Cholier's claim that it had an oral contract with Torch to settle certain natural gas take-or-pay claims which Search had against Northern Natural Gas

- 2 -

Company ("Northern"), and that Torch breached that contract.[1] According to Cholier president Rick Cline, he and Dee Davis of Torch had numerous telephone conversations regarding Cholier's representing Torch in negotiations with Northern. Cline testified that during a telephone conversation on March 4, 1992, Davis hired Cholier, agreeing to pay Cholier 15% of the sums recovered, and agreeing to consider a higher fee based on the work involved. According to Cline's testimony, Davis said, "Rick, I can go ahead and agree to this [Cholier's representation] and the 15 percent rate," to which Cline said, "[T]hat's great. At the same time, I think there [are] sufficient things to be developed on the Search claim that I would like a higher percentage." Appellant's App., Vol. I at 196. In response to repeated questions, Cline consistently characterized the arrangement as a firm agreement based on a floor contingency fee of 15%, with an agreement to discuss a higher percentage once Torch reviewed Cholier's schedules. Id. at 198, 217, 223; Vol. II at 349.

As background to the March 4 conversation, Cline testified that the parties had already discussed the wells to be included, as those "that had been reserved by the FDIC." Vol. I at 194. In a letter confirming the telephone conversation, Cholier identified the wells to be included in the claim against Northern in an attached schedule which listed "certain wells that were originally included with Search." Cholier letter to Torch dated

---

[1]Northern purchased gas from Search wells under an agreement which obligated Northern to accept a certain quantity of gas or to pay for that quantity even if Northern did not accept it.

- 3 -

March 5, 1992, Vol. III at 1046; Vol. I at 204 . According to the letter, Torch was to update the schedule to indicate any changes in ownership. Vol. III at 1046. Cline further testified that the contract was later confirmed in a conversation between him and Sue Ann Craddock of Torch, during which Craddock said, "Rick we've got a deal." Vol. I at 218. Cline stated that, thereafter, a Torch representative came to his office to review and copy his background work product, and that Torch then breached the contract by notifying Cholier that it would not be using Cholier's services, but would be negotiating with Northern on its own behalf.

As evidence of damages, Cholier presented an expert's testimony that Cholier would have been able to recover $859,325.86 for Torch from Northern.[2] Although Cholier admitted that the parties never agreed on any fee beyond the 15% floor, it argued entitlement to damages based on a "reasonable fee" of 30% of $859,325.86. Vol. I at 217, 223; Vol III at 1012-13 .

Torch characterizes the events differently. According to Torch, Cholier had merely made unsolicited proposals to which Torch never agreed, and, in any event, Cholier's own version of events indicated that there was no meeting of the minds on

---

[2]Although this recovery figure is greater than the $550,000 which Torch was able to recover on its own, it represents the mathematical estimate of Cholier's expert as the amount Cholier would have been able to obtain. According to the expert, factors such as incorrect pricing data and failure to distinguish types of interests resulted in Torch's actual settlement being lower than Cholier would have been able to negotiate. Vol. II at 687-88.

essential terms. Thus, Torch argues that Cline's testimony establishes that the parties never agreed on the price (i.e. the contingency fee percentage, or whether any fee was to be inclusive or exclusive of costs), that the wells to be included in the contract were not adequately identified (arguing, inter alia, that the schedule attached to Cholier's letter cannot suffice since it clearly included well interests which Torch no longer owned), and there was no time specified for Cholier's performance.

The jury found that Torch breached a contract with Cholier, and awarded Cholier $257,797.76 which equals 30% of Cholier's estimated recovery of $859,325.86. It made no findings on the unjust enrichment claim. Following the adverse verdict, Torch made a Rule 50 motion for judgment as a matter of law on the contract claim, together with an alternative motion for a new trial pursuant to Rule 59. Cholier opposed the motion, arguing that Torch was precluded from bringing it because Torch had failed to renew its original motion at the close of all the evidence. Cholier also contested on the merits.

Without explaining the basis for doing so, the district court rejected Cholier's waiver argument and found that Torch's motion should be considered on the merits. The court then denied the motion. On Torch's appeal from the district court's denial, Cholier continues its opposition based on waiver and the merits.

**DISCUSSION**

A.     <u>Preserving the Motion for Judgment as a Matter of Law Under Fed. R. Civ. P. 50</u>

At the close of Cholier's evidence, Torch moved for judgment as a matter of law on all claims pursuant to Fed. R. Civ. P. 50. At the time of argument, the court specifically asked the parties to be brief, and the court also expressed a desire that the case finish that afternoon. Appellant's App., Vol. III at 796, 815. Following the lunch break, the district court granted the motion on all tort claims, except fraud, which the court inadvertently omitted, and the court denied the motion on the breach of contract claim and reserved its ruling on the unjust enrichment claim. Id. at 816-21. Torch then presented and rested its case that same afternoon.

After dismissing the jury for the day, the court held a dialogue in open court with the attorneys concerning preparation of jury instructions. At that time Cholier's attorney advised the court that it had not ruled on the fraud issue contained in Torch's motion for a directed verdict. The court then reviewed its notes, granted the motion as to the fraud claim, and concluded, "So the issues in front of the Court and the parties and the jury are breach of contract or in the alternative quantum meru[i]t or the unjust enrichment theory." Id. at 991.

Subsequently, during the jury instruction conference the following Monday, Torch's counsel briefly referred to a renewed motion on the quantum meruit theory. Recalling that its ruling on that issue had been reserved, the court then denied the motion without hearing additional argument. Id. at 1005-06.

"[A] defendant's motion for directed verdict made at the close of the plaintiff's evidence is deemed waived if not renewed at the close of all the evidence . . . ." Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 (10th Cir. 1987).[3]  In such instances, the defendant's failure to renew the motion not only bars the district court's subsequent consideration after the verdict, but also precludes our consideration on appeal. Id.

Torch argues that its situation is governed by Trujillo v. Goodman, 825 F.2d 1453, 1455-56 (10th Cir. 1987), which approved a liberal construction for what constitutes a motion for a directed verdict.  Thus, Torch contends that its renewed motion on the unjust enrichment claim suffices to preserve its right to bring the post verdict motion on all grounds.  Alternatively, Torch argues that its situation is governed by Armstrong v. Federal Nat'l Mortgage Ass'n, 796 F.2d 366, 370 (10th Cir. 1986), which held that failure to renew a motion at the close of all evidence would not constitute a waiver if the evidence introduced after the initial motion were brief and the court indicated that renewal would not be necessary to preserve the issues raised.

Cholier correctly counters that a motion under Rule 50 preserves only the grounds raised in that motion, and, moreover, the court's original unequivocal denial of the breach of contract issue does not indicate an intent to preserve the issue.  See First Sec. Bank v. Taylor, 964 F.2d 1053, 1056-57 (10th Cir. 1992); Karns, 817 F.2d at 1456.

---

[3]Fed. R. Civ. P. 50 currently employs the terminology "judgment as a matter of law" instead of "directed verdict" and "judgment notwithstanding the verdict," but the standards remain the same. Id. advisory committee's note to 1991 Amendment.

However, Torch is also correct in noting that this court has "recognized that in satisfying the requirements of Rule 50, technical precision is unnecessary." Anderson v. United Tel. Co., 933 F.2d 1500, 1503 (10th Cir.), cert. denied, 502 U.S. 940 (1991). Accordingly, we review a directed verdict motion "in light of the purpose of the rules to secure a just, speedy, and inexpensive determination of a case." Id. Especially when, as in this case, the district court considered and rejected the waiver argument, we may conduct our own review of the record to determine whether there is an appropriate basis to sustain the court's action.[4]

As noted above, the record clearly demonstrates that Torch's Rule 50 motion was reopened at the close of all the evidence, at which time the court reviewed its notes, made additional rulings and expressly reiterated its decision on the full motion. Accordingly, under Trujillo and Anderson, the motion, in substance, was adequately renewed, considered, and preserved in its entirety for our review.

B.    Ruling on the Motion for Judgment as a Matter of Law

We review de novo a district court's ruling on a motion for judgment as a matter of law, applying the same legal standard as the district court under Fed. R. Civ. P. 50. Clark v. Brien, 59 F.3d 1082, 1086 (10th Cir. 1995), cert. denied, 116 S. Ct. 800 (1996);

---

[4]We may affirm on any grounds supported by the record. United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Thompson v. State Farm Fire & Casualty Co., 34 F.3d 932, 941 (10th Cir. 1994). Thus, we construe the evidence and inferences most favorably to the nonmoving party, without weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury. See Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir. 1990), cert. denied, 500 U.S. 905 (1991). However, "we must be guided by the requirements of the underlying cause of action." Palmer v. City of Monticello, 31 F.3d 1499, 1503 (10th Cir. 1994).

Viewed in the light most favorable to Cholier, there was sufficient evidence to support a contract claim. That is, as previously set forth, Cholier's president Rick Cline testified that Torch representative Dee Davis hired his company in a telephone conversation on March 4, 1992, and that the agreed upon contract terms included a minimum 15% contingency fee, with increases subject to later negotiation, that the parties had already discussed the wells to be included, which Cline generally identified in a confirmation letter which also included a schedule of wells which Torch was to update for current ownership, and that subsequently Torch representative Sue Ann Craddock confirmed to him that they had a deal. Appellant's App., Vol. I at 193-99, 204, 218.

Although Torch disputes these conversations and insists that the documentation supports its version of the facts, under the standards for Rule 50, the court must draw all inferences in favor of Cholier, and in favor of allowing the jury to resolve such disputes. Thus, the minimum terms of the alleged contract are not invalidated, as a matter of law,

- 9 -

by the fact that the parties contemplated future negotiations to increase Cholier's compensation. That is, viewed in the light most favorable to Cholier, Cline's testimony could show acceptance as to those minimum terms, rather than a conditional acceptance or counter offer. Therefore, the parties' agreement to review certain terms at a later date would not necessarily void the minimum terms ab initio. Nor is the fact that Cholier was awaiting confirmation for the exact wells to be included fatal to finding a meeting of the minds, in light of Cline's testimony that the parties had agreed upon the parameters which would define the included wells. Finally, the fact that the contract contained no specified duration is not critical under Oklahoma law, inasmuch as its duration can be fairly implied from the contract's subject matter. See R.S. Mikesell Assocs. v. Grand River Dam Auth., 627 F.2d 211, 212-13 (10th Cir. 1980) (applying Oklahoma law). Accordingly, the district court did not err in finding sufficient evidence to warrant submission to the jury.

C.      Motion for a New Trial Under Fed. R. Civ. P. 59

A finding of sufficient evidence to create a jury question under Rule 50 does not preclude a finding that the actual verdict rendered was against the weight of the evidence for purposes of Rule 59. Fineman v. Armstrong World Indus., 980 F.2d 171, 211 (3d Cir. 1992), cert. denied, 507 U.S. 921 (1993). Thus, when the verdict is clearly and decidedly against the weight of the evidence, a new trial is proper. Getter v. Wal-Mart Stores, Inc.,

66 F.3d 1119, 1125 (10th Cir. 1995), cert. denied, 116 S. Ct. 1017.  Additionally, it is within the trial court's discretion to order a new trial on damages alone when the jury's award is speculative or excessive.  See Collier v. Hoisting & Portable Eng'rs Local Union No. 101, 761 F.2d 600, 603 (10th Cir. 1985).  Moreover, in ruling on a motion for a new trial on grounds that damages are excessive, the trial court may order a remittitur, or alternatively a new trial if the plaintiff refuses the remittitur.  Klein v. Grynberg, 44 F.3d 1497, 1507 (10th Cir.), cert. denied, 116 S. Ct. 58 (1995).  In such cases, a motion for a new trial made on the grounds that the jury's verdict is against the weight of evidence usually presents a question of fact, rather than law, and is properly directed to the discretion of the trial court, which we review for manifest abuse.  Richardson v. City of Albuquerque, 857 F.2d 727, 730 (10th Cir. 1988).

However, as with a Rule 50 motion, the evidence must be considered in light of the requirements of the underlying cause of action.  See Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1538 (5th Cir. 1984) (approving order for a new trial where jury's verdict indicated a misunderstanding and misapplication of damages applicable to breach of contract and fraud claims).  Thus, where it is apparent that certain identifiable sums were improperly included in the jury's verdict, an order of remittitur is appropriate, with an alternative order for a new trial if the plaintiff refuses to accept the remittitur.  See Martin B. Glauser Dodge Co. v. Chrysler Corp., 418 F. Supp. 1009, 1023

(D.N.J. 1976), rev'd on other grounds, 570 F.2d 72 (3d Cir. 1977), cert. denied, 436 U.S. 913 (1978).

Torch argues that there was no evidence to support the jury's specific award of a contingency fee amounting to 30% of the recovery that Cholier's expert calculated Cholier would have obtained had Cholier been permitted to perform the contract.[5] In response, Cholier contends that the general verdict form prevents us from knowing how the jury calculated damages.[6] Cholier also counters that, in any event, the jury was justified in basing its verdict on a 30% contingency fee, since there was evidence that such a fee is reasonable. However, this argument confuses Cholier's claim for breach of contract with Cholier's claim for unjust enrichment, and the cases cited by Cholier in

---

[5]Torch also argues that Cholier's evidence on damages is so hopelessly flawed and insufficient that its use by the jury cannot be sustained. However, Torch challenged Cholier's expert during cross examination, and, apparently, the jury believed the expert's explanation as to the validity of her method. Torch further attacks the expert's estimate on other grounds, such as improperly included interests, but Torch failed to raise the argument below, and Torch points to nothing in the record which indicates it presented any evidence at trial to dispute the validity of such inclusions. Finally, Torch points to evidence that Cholier expended $216,000 in legal fees in settling its other clients' claims, and argues that the jury should have deducted that figure from Cholier's damages against Torch. However, Torch presented no evidence that would have allowed the jury to connect that expense with Cholier's recovery against Torch, and in fact, Torch appears to have resisted Cholier's efforts to relate the two in connection with its claimed damages against Torch. Appellant's App., Vol. I at 285-86.

[6]We reject this argument outright. In fact, the damages are the exact amount urged by Cholier in its closing argument: "Therefore, you have only the figures of 30 percent from either side for a reasonable fee for contract between the parties. It is therefore straight mathematics to find the sum of $257,797.75 for Cholier's total damages in this case." Appellant's App., Vol. III at 1013.

support of the "reasonable value" of services figure are inapposite, as they concern contracts in which full performance has already been rendered.

Rather, Cholier's own citation of authority shows that: "In Oklahoma, the measure of damages for the breach of a contract of employment by the employer is prima facie the sum stipulated to be paid for the services." Appellee's Br. at 30 (quoting Sharpless Separator Co. v. Gray, 161 P. 1074 (Okla. 1916) (construing a contract in which the breach occurred before plaintiff was allowed to perform)); see also White v. American Law Book Co., 233 P. 426, 427 (Okla. 1924) (limiting contingency fee recovery to amount named in the contract), cited in Appellee's Br. at 31.

Although Cholier claims that Torch agreed to consider a higher fee than the agreed upon "floor" of 15%, the evidence conclusively shows no further agreement was ever reached. Under Oklahoma law, that agreement to agree to more than the 15% fee is too vague to be enforceable.[7] See American Automated Theatres, Inc. v. Hudgins, Thompson, Ball & Assocs., 516 P.2d 565, 567 (Okla. Ct. App. 1973). Thus, in basing its damages award on the 30% figure, the jury impermissibly ignored its instructions that the damages for the breach of contract "cannot be contingent or speculative." Jury

---

[7] Were it not for the evidence that the parties agreed on a floor contingency fee of 15%, we would necessarily find the whole contract unenforceable, thus warranting judgment for Torch under its Rule 50 motion. See Dunn v. Dunn, 391 P.2d 885, 887 (Okla. 1964).

- 13 -

Instruction No. 18, Appellee's App., Tab 5. Accordingly, the district court manifestly abused its discretion in denying Torch's motion for a new trial.[8]

Since the extent of excess damages is clearly ascertainable, we remand with instructions that the court order a remittitur, with damages calculated on a 15% fee, to be awarded in the amount of $128,898.88, with the further order for a new trial on damages in the event Cholier refuses to accept the remittitur.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[8]Although Torch's notice of appeal indicated that it was appealing the separate judgment for attorney's fees which the district court granted Cholier as the prevailing party on a contract action under Okla. Stat. Ann. tit. 12, § 936 (West 1988), Torch made no arguments on the issue. However, in its own brief, Cholier requested attorney's fees on appeal, which request Torch countered in its reply brief. We agree with Torch that, inasmuch as the awarded damages were clearly excessive and improper, Cholier is not entitled to attorney's fees in this well-taken appeal.