## TULSA FUEL & MFG. CO. v. GILCHRIST DRILLING CO.

No. 9709—Opinion Filed May 18, 1920.

(Syllabus by the Court.)

**1. Appeal and Error—Review—Sufficiency of Evidence.**

Where the evidence in the case reasonably tends to support the verdict of the jury, and the trial court has entered judgment thereon, such judgment will not be reversed on the ground of the insufficiency of the evidence.

**2. Oil and Gas—Action on Drilling Contract —Implied Contract—Sufficiency of Evidence.**

Evidence examined, and held sufficient to support the verdict returned by the jury.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by the Gilchrist Drilling Company against the Tulsa Fuel & Manufacturing Company on drilling contract. Judgment for plaintiff, and defendant brings error. Affirmed.

Shell S. Bassett, for plaintiff in error.

Edward P. Marshall, for defendant in error.

PITCHFORD, J. The plaintiff in error was defendant below, and the defendant in error was plaintiff below. Hereafter the parties will be referred to, respectively, as they appeared in the trial court.

The Lynna Oil Company was the owner of an oil lease, and the defendant was the owner of a gas lease on the west half of the southwest quarter of section thirty (30), township twenty-three (23) north, range fourteen (14) east. These leases had been purchased from the original owners, O. B. Goldrick, Ray Collins, and Donald P. Oak. The defendant's purchase was prior to that of the oil lease by the Lynna Oil Company.

There seems to have been some agreement or understanding between the defendant and the original owners of the oil lease that either party had the right to drill wells upon the leasehold estate, and in case the owners of the oil rights drilled a well producing gas the owners of the gas rights might take it over, and if the owners of the gas rights drilled a well producing oil the owners of the oil rights might take the same over, the party so taking the well to pay the expenses of drilling.

The Lynna Oil Company purchased the oil lease December 15, 1915. There is no positive evidence showing that the defendant knew of the change in ownership of the oil lease. The Gilchrist Drilling Company, the plaintiff, was composed of W. O. Goldrick and F. N. Gilchrist. W. O. Goldrick was the father of O. B. Goldrick, one of the original owners of the lease and had been acting as superintendent for his son, O. B. Goldrick, Collins, and Oak.

On or about January 1, 1916, the plaintiff commenced and prosecuted to completion to the depth of 1,275 feet, a test well for gas and oil. The well proved to be dry, and was accordingly plugged. The plaintiff, after completion of the well, sent a bill for the work to the Lynna Oil Company and also to the defendant. The former paid one-half of the bill and refused to pay the balance, claiming that the defendant was liable therefor. The defendant refused to acknowledge its liability, and the plaintiff commenced this action in the district court for Tulsa county against the defendant, demanding judgment for the sum of $541.87. Judgment was returned in favor of the plaintiff for $440.50.

The grounds relied on for reversal of the judgment of the trial court were, first, the verdict of the jury was contrary to the evidence introduced in said cause and wholly unsupported thereby; second, that the verdict of the jury and judgment of the court thereon were contrary to law.

The jury at the time the cause was submitted to them answered certain interrogatories as follows: First: "Was there an express or implied contract between the plaintiff and the defendant, the Tulsa Fuel & Manufacturing Company?" to which the jury unanimously answered, "Yes." Second: "Did the Tulsa Fuel & Manufacturing Company know that the plaintiff was drilling a well for it, or did it have knowledge of facts or circumstances sufficient to apprise it of that fact?" to which question the jury unanimously answered, "Yes."

The facts and circumstances connected with and surrounding the drilling of the well are practically as follows: Sometime prior to January 1, 1916, W. O. Goldrick, one of the plaintiffs, had a conversation with M. D. Arbuckle, field superintendent for the defendant company, in which he told Mr. Arbuckle that something ought to be done with

the lease; that the rights thereunder would soon expire. He says that Mr. Arbuckle replied by telling him: "Our contractors are busy. We can't get to it. Have you got a string of tools you can put on them?" The witness says that he told him he could. After this conversation over the 'phone, the witness had a conversation with Mr. Arbuckle in the office of the plaintiff company. They there discussed the best place to locate the well. Mr. Arbuckle stated that he wanted the well in the southeast corner to test the lease south of it. The witness further testified that he reported to the Tulsa Fuel & Manufacturing Company as to the progress being made in drilling the well; that he called up the office of Mr. Arbuckle and made reports at different times, and Mr. Arbuckle was asked for gas and his reply was, "They didn't have any line up there." The witness further stated that after they got the well to a point where they considered it dry, he called Mr. Arbuckle over the telephone and wanted to know what should be done, whether they ought to go any deeper or not. He says that Mr. Arbuckle answered, "As far as we are concerned, we are through with it." The witness further testified that he sent a bill to the defendant and they refused to pay it. He spoke to Mr. Arbuckle about it, and Mr. Arbuckle replied: "We won't pay 85c a foot; we only pay 75c to our contractors."

There was also evidence to the effect that Mr. Arbuckle was frequently in the neighborhood where the well was being drilled, and was present at the well on one occasion, at least. It appears that the Lynna Oil Company furnished the casing for the well and also the gas to run the machinery.

The question presented for our consideration is as to whether or not there was evidence sufficient to sustain the verdict of the jury. The province of the jury is to weigh the evidence, consider the conduct and manner of those testifying, and to reconcile conflicts in the proof, and if the verdict is found to be reasonably sustained by any competent evidence, the same should not be disturbed.

There is nothing in the evidence showing an express contract between the parties, consequently the plaintiff must rely for recovery upon what is known as an "implied contract." The intention of the parties in an implied contract is to be gathered from their acts, in connection with the surrounding circumstances, and what was said between the parties at the time, the nature of the work done, and as to how the interest of the parties sought to be charged is affected thereby.

An implied contract is defined in 13 C. J., sec. 8, p. 241, as follows:

"A contract implied in fact, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. It follows, that the only distinction between this species of contract and express contracts rests in the mode of proof; the nature of the understanding is the same, and both express contracts and contracts implied in fact are founded on the mutual agreement of the parties. The one class is proved by direct, the other by indirect evidence; in other words, the one must be proved by an actual agreement, while in the case of the other it will be implied that the party did make such an agreement as, under the circumstances disclosed, he ought in fairness to have made. The implication, of course, must be a reasonable deduction from all the circumstances and relations of the parties, although it need not be evidenced by any precise words, and may result from random statements and uncertain language."

In Rains et al. v. Weiler et al. (Kan.) 166 Pac. 235, it was said:

"Parties may be as firmly bound by implied contracts as by those expressed in words, oral or written; they may arrive at agreements by acts and conduct which evince a mutual intention to contract and from which the law implies a contract."

In section 1363, Elliott on Contracts, vol. 2, it is said:

"Where there is no family relationship between the parties and one accepts and retains the beneficial results of another's services, which he had no reason to suppose were gratuitous, and which he could accept or not at his option, the law will imply a previous request for the services and a promise to pay what they were reasonably worth."

There was evidence on the part of the plaintiff which tended to show that the gas lease was about to expire for lack of development and that the defendant, by its field superintendent, Mr. Arbuckle, had authorized the plaintiff to drill the well. When his attention had been called to this and when he answered: "Our contractors are busy; we can't get to it. Have you got a string of tools you can put on them?"—this was within itself sufficient to induce the plaintiff to suppose that Mr. Arbuckle understood that the drilling thereafter would be for the benefit of the defendant company and especially when requested by the plaintiff to suggest where he desired the well drilled and

when the point to drill was selected it was located near the line of a 30-acre tract immediately to the south, covered by leases owned by the defendant, and there is evidence tending to show that Mr. Arbuckle wanted the well located so that adjoining leased premises owned by the defendant could thereby be tested.

While engaged in drilling, the plaintiff requested gas from Mr. Arbuckle; his reply was that the defendant had no gas line up there. After the well was found to be dry, and the defendant was notified of this fact, the answer was, "As far as we are concerned, we are through with it." This remark was rather significant. If the defendant had never had any interest in the well, why a remark of this nature? When called upon for gas, that within itself was significant, and should have been notice to the defendant that the plaintiff considered the defendant was to some extent interested in the drilling. After the well had been completed and plugged, and Mr. Arbuckle was informed of the price which was charged by the plaintiff, there was no denial or liability, but, on the contrary, Mr. Arbuckle seemed to realize that there was a liability against the defendant, for his answer was: "We won't pay 85c a foot; we only pay 75c to our contractors."

From all the evidence in the case, the jury could infer that the defendant, in effect, requested the plaintiff to drill the well; that it directed the location of the well, knew of the drilling thereof, and received reports of the progress which was being made. There is nothing in the record indicating that the drilling by the plaintiff was intended as a gratuity to the defendant nor anything to justify the defendant in believing that the former lessees, Goldrick, Collins, and Oak, were having the lease tested under their oil lease. If Mr. Arbuckle was under the impression that the original lessees were interested and that the well was being drilled for their benefit alone, his acts were very inconsistent with that belief. In our opinion, the evidence is ample to justify the jury in drawing the inference that the defendant had every reason for believing and knowing that the well was being drilled for the benefit and at the instance of the defendant. The plaintiff was not in any manner interested in the lease. If gas had been discovered in paying quantities, as a matter of course the defendant would have been benefited thereby. On the other hand, if oil had been discovered, the owners of the oil lease would have been benefited. The only way in which the plaintiff could have been benefited was in receiving compensation for its work.

In German-American Bank of Blackburn et al. v. Rush et al., 68 Oklahoma, 171 Pac. 713, Owen, C. J., in delivering the opinion, said:

"In an action for damages for breach of contract, where it appears that the evidence reasonably tends to support the allegations of the petition and to sustain the plaintiff's theory, the judgment of the lower court in overruling a demurrer to the evidence will not be reversed; and, there being a conflict in the evidence on the issues properly submitted to the jury, the judgment based upon the verdict will not be set aside by this court."

In Incorporated Town of Sallisaw v. Chappelle, 67 Oklahoma, 171 Pac. 22, Mr. Justice Kane, in delivering the opinion of the court, said:

"Where there is any evidence reasonably tending to support the verdict of the jury or the judgment of the court in an action of purely legal cognizance, the same will not be set aside on appeal on the ground that it is contrary to the evidence."

In Kline v. Haffner, 73 Oklahoma, 175 Pac. 341, it is said:

"There being some evidence to support approved verdict, based on conflicting evidence, the appellate court will not interfere with the judgment and will treat issues of fact as settled thereby."

To the same effect, see Blasdel et al. v. Grower, 70 Oklahoma, 173 Pac. 644; Dimmers v. Regan et al., 68 Oklahoma, 174 Pac. 742.

In Chicago, R. I. & P. R. Co. v. Pruitt, 67 Oklahoma, 170 Pac. 1143, Mr. Justice Rainey said:

"Where the evidence in the case reasonably tends to support the verdict of the jury and the trial court has entered judgment thereon, such judgment will not be reversed on the ground of the insufficiency of the evidence."

From a careful examination of the entire evidence, we find the same is sufficient to support the verdict returned by the jury.

The judgment of the trial court is affirmed.

RAINEY, C. J., and KANE, JOHNSON, and HARRISON, JJ., concur.