**RAY F. FISCHER COMPANY, Inc., a corporation, Plaintiff in Error,**

v.

**LOEFFLER–GREEN SUPPLY COMPANY, an Express Trust, Defendant in Error.**

No. 36447.

Supreme Court of Oklahoma.

Sept. 13, 1955.

Edward M. Box, Oklahoma City, for plaintiff in error.

McClelland, Kneeland, Bailey & McClelland, Oklahoma City, By: Robert O. Bailey, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an action on open account, brought by the plaintiff Loeffler-Green Supply Company, a wholesale dealer in plumbing supplies and equipment, against the defendant Ray F. Fischer Company, Inc., a plumbing contractor. The parties will be referred to as they appeared in the trial court.

For several years prior to the filing of this action on June 21, 1950, the defendant had been engaged as a sub-contracting plumbing company in the construction of different buildings and projects, buying practically all needed equipment and supplies from the plaintiff. The unpaid balance on this account at times ran as high as $25,000. Except as to one small item of $78.75 which will be discussed later, there was no controversy as to any item or the price thereof charged to defendant. The sole controversy involved herein was as to defendant's liability for interest charges on past due invoices which were included as separate items in said account. Because all other charges had been paid, this action was brought to recover the unpaid balance of such interest and the aforementioned $78.75, totaling slightly less than $1500. The trial court, hearing the case without the intervention of a jury, rendered judgment for plaintiff in the amount of $915.24, from which this appeal has been perfected.

Although the record herein, including the exhibits, is voluminous, there is here presented for determination the single question: "Was defendant liable for interest on his unpaid past due balances?" The business transactions between the parties were commenced in 1945 and it was some two years later before any invoice or account balance became past due and unpaid. The general method of their doing business was that plaintiff would furnish quotations of prices on the various items needed for a particular job. Subsequently, the defendant would order or furnish ship-

ping instructions and the items would be delivered to defendant on the job. After delivery of the merchandise, invoices thereof would be mailed by plaintiff to defendant. The elapsed time between the delivery of the goods and the mailing of the invoice varied, according to circumstances, from 2 to 20 or 30 days. Printed in small red type on the upper left hand corner of each invoice was the following notation:

"Important Notice

"We will not accept merchandise returned without our permission. A charge of 10% will be made on all merchandise returned to cover cost of handling. Interest at the rate of 6% will be charged on all past due accounts."

and in the same type about the center of the invoice, below the address and above the itemization, was the following:

"Terms: 2% 10th Prox. Net 30 days."

On the back of the front cover of plaintiff's 1948 catalog, which was sent to defendant, was the following:

"Terms of Payment: Our regular terms are Thirty Days Net. Where discounts are offered, for prompt payment, terms of such discount as indicated on the individual invoice must be strictly adhered to."

On May 14, 1948, defendant gave plaintiff a check for $2,012.32 in payment of certain invoices and all interest charged to that date.

Under these circumstances, the trial court properly held that there was an implied contract on the part of defendant to pay interest after thirty days from delivery of goods. In the case of Tulsa Fuel & Mfg. Co. v. Gilchrist Drilling Co., 79 Okl. 82, 190 P. 399, 400, the following rule, taken from 13 C.J. 241, was quoted and adopted:

"'A contract implied in fact, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts,

or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. It follows that the only distinction between this species of contract and express contracts rests in the mode of proof; the nature of the understanding is the same, and both express contracts and contracts implied in fact are founded on the mutual agreement of the parties. The one class is proved by direct, the other by indirect, evidence; in other words, the one must be proved by an actual agreement, while in the case of the other it will be implied that the party did make such an agreement as, under the circumstances disclosed, he ought in fairness to have made. The implication, of course, must be a reasonable deduction from all the circumstances and relations of the parties, although it need not be evidenced by any precise words, and may result from random statements and uncertain language.'" See, also, 17 C.J.S. Contracts, § 4.

The acts of the defendant clearly imply that it contracted to pay interest, sought to be here recovered, accrued subsequent to the payment of all interest up to May 14, 1948. This payment was made after defendant had received hundreds of invoices bearing the notations above quoted. The testimony of the business manager of defendant was to the effect that he had read those notations many times. Plaintiff's credit manager testified regarding the above mentioned check of May 14, 1948, that on that date he went to defendant's business manager to investigate the account.

As to what occurred at that meeting, he testified that:

"Well, I was there inquiring about payment on these back past due accounts, and we went in the office of the bookkeeper and he checked over the number list, also the various accounts as they were set up showing the balances due, and checked off the

ones he desired to pay at that time. Then I said, 'What about the interest'. 'I want to include that on there, too.' He said, 'Well, it's all right.' So they run up a total of all the accounts that had been selected for payment. plus the $362.12, interest and gave me a check."

The check which was then issued was paid in due course and we find no complaint or criticism of it or of interest charges until after this suit was filed more than two years later. Under these circumstances, there can be little merit to defendant's claim that any payment of interest was unauthorized.

The facts in the case at bar bring it squarely within the application of the rule in the Tulsa Fuel & Mfg. Co. case quoted above and of section 133 of Title 15 O.S. 1951, which provides as follows:

"An implied contract is one, the existence and terms of which are manifested by conduct."

To the same effect is the case of Inman v. Stephenson, 170 Okl. 548, 40 P.2d 1107.

 Having reached the conclusion that there was an implied contract to pay interest, the recovery is founded upon contract and does not constitute damages. Therefore, 23 O.S.1951 §§ 6 and 22 have no application and the acceptance by plaintiff of the principal did not extinguish the debt and the right to recover interest thereon. The applicable rule is stated in Nelson v. Chicago Mill & Lumber Corp., 8 Cir., 76 F.2d 17, 23, 100 A.L.R. 94, as follows:

"When the right to interest is based on a contract, it becomes a substantive part of the debt itself and is recoverable even though the principal debt has been paid and extinguished."

Defendant suggests that there cannot be an express and an implied contract for the same thing existing at the same time, citing 12 Am.Jur. 505 but that rule has no application here when considered in the light of the definition contained in the same volume of work at pages 499 and 500 that "in an express contract all the terms and conditions are expressed between the parties, while in an implied contract, some *one or more* of the terms and conditions are implied from the conduct of the parties."

 One of the items in the account was for $78.75 as the price of a "powers Regulator." It was installed in the building by the defendant but the testimony was conflicting as to whether the obligation to pay for it was on defendant or a Mr. F. X. Loeffler, the manager of plaintiff, who acted in the capacity of an engineer on the job. The judgment of the trial court that the same constituted an obligation of defendant will not be disturbed being based on conflicting testimony.

 The item mentioned in the last paragraph above was the only one about which there was any disagreement, but defendant argues that, because thereof, the account was unliquidated and no interest was allowable. There are several reasons why the position is untenable. The account was made up of many separate contracts. Each order of defendant, filled and delivered by plaintiff, constituted a separate contract whereby defendant was obligated to pay the purchase price plus interest if not paid within 30 days. Each was severable from the others. If defendant was not obligated on account of the delivery of the regulator, there was no debt for its purchase price nor the interest thereon. It had no effect on the other transactions which were complete and liquidated within themselves. The trial court held that defendant did purchase the item. The purchase price with interest was a liquidated amount.

The judgment of the trial court was in harmony with the evidence and the law and is affirmed

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD, and JACKSON, JJ., concur.