William Earl JONES, Plaintiff,

v.

UNIVERSITY OF CENTRAL OKLA-HOMA, formerly known as Central State University, State of Oklahoma; William Lilliard, President, University of Central Oklahoma; Kenneth Elsner, Dean of the College of Education; Emmet Osgood, individually and in his official capacity; Carl Breazeale, individually and in his official capacity; and Lonnie Gilliland, Jr., Director of Safety Institute, University of Central Oklahoma, Defendants.

No. 83041.

Supreme Court of Oklahoma.

Dec. 12, 1995.

Lewis Barber, Jr., Guinise M. Marshall, Barber & Marshall, P.A., Oklahoma City, for plaintiff.

Sheridan A. McCaffree, Board of Regents of Oklahoma Colleges, Oklahoma City, Julie Jones Corley, Assistant Attorney General, Oklahoma City, for defendants.

ALMA WILSON, Chief Justice:

William Jones, an assistant professor at the University of Central Oklahoma, brought suit in federal court against the University, alleging that the University had wrongfully deprived him of tenure. The plaintiff's claim to continued employment is based on a local, unwritten tenure policy which was in effect when the plaintiff was first hired by the University in 1981.

The United States District Court for the Western District of Oklahoma granted the defendant's motion for summary judgment.

The Court of Appeals for the Tenth Circuit reversed the ruling, holding that a " 'legitimate claim of entitlement' in the state university tenure setting is defined solely through the application of state contract and employment law." *Jones v. University of Central Oklahoma,* 13 F.3d 361, 365 (10th Cir.1993). The Tenth Circuit suggested that the district court certify the question to the Supreme Court of Oklahoma. As a result, the District Court, pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, §§ 1601–1611, has certified the following question of state law:

> Can a university professor have a legitimate claim to tenure pursuant to an informal, unwritten tenure policy, when there is a contrary formal tenure policy already on the books and in effect?

Section 1604(2) provides for the certifying court to provide a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the question arose. The following facts are provided by the federal district court.

The plaintiff first became eligible for tenure at the University of Central Oklahoma in 1988. The tenured members of the College of Education voted in January, 1992 to deny tenure to the plaintiff. In spite of this formal denial of tenure, the plaintiff contended that he had a property right in tenure, because he claimed the university had a separate procedure known as "local tenure." Although the local tenure rule was not in writing, the plaintiff asserted that the university gave a faculty member local tenure after four to seven years of full-time service. He claims that local tenure was based on longevity only, and those granted local tenure were not required to be interviewed subsequently by a tenure committee. The plaintiff maintains that he became eligible for local tenure in 1985, in the Department of Safety Education in the College of Special Arts and Sciences.

The plaintiff, in his brief in chief to this Court, attempts to reword the certified question to whether a university professor may have a legitimate claim to tenure pursu-

ant to an informal, unwritten tenure policy. The plaintiff would delete the limitation "when there is a contrary formal tenure policy already on the books and in effect." The plaintiff and the defendant university add to the facts presented in the order certifying the question of state law to this Court. The Uniform Certification of Questions of Law Act provides for this Court to answer questions of law certified to it. 20 O.S.1991, § 1602. Our answer will not presume any facts outside those offered by the certification order.

In *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), the United States Supreme Court acknowledged the potential validity of unwritten, *de facto* tenure policies. The Court explained that de facto tenure policies could be implied from a "promisor's words and conduct in the light of the surrounding circumstances." *Perry v. Sindermann,* 408 U.S. at 602, 92 S.Ct. at 2700 (quoting *Corbin on Contracts,* §§ 561–572A [1960] ).

■ Title 15 provides that a contract is either express or implied.[1] The terms of an express contract are stated in words. The existence and terms of an implied contract are manifested by conduct. 15 O.S.1991, §§ 131–133. *Wattie Wolfe Co. v. Superior Contractors, Inc.,* 417 P.2d 302, 308 (Okla. 1966) describes the elements of an implied contract and contrasts it to express contracts. Implied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract. The distinction between implied and express contracts rests in the mode of proof, but both are founded upon the mutual agreement of the parties. An express contract is proved by direct evidence of an actual agreement. With an implied contract, the conduct of the parties suggests the

agreement that, in fairness, they ought to have made.

■ Because UCO's local tenure policy, if it ever existed, was never committed to writing, a grant of tenure could have existed only through an express oral contract or through a contract implied in fact. The facts in the certified order do not indicate that officials at UCO gave the plaintiff explicit verbal or written assurance that he had received tenure. Rather, he apparently relied on a general understanding that existed among university staff during the early period of his employment. If the plaintiff had a contractual assurance of tenure, it could have existed only as an implied contract.

This Court has held that a contract will not be implied where it would result in perpetration of a wrong, where it would be inequitable, or where it is against the express declaration of the person to be charged. *Wagner v. Blankenship,* 207 Okla. 471, 250 P.2d 464, 467 (1952). The plaintiffs, in *Wagner,* made a down payment on a house to the two defendants who owned the house. Before the sale was completed, the plaintiffs bought on credit a bath tub, toilet, sink, water heater, septic tank, and pipes and accessories necessary to install these in the house. The plaintiffs, however, were unable to complete the purchase of the house, and forfeited their down payment of $600. With the permission of the defendants, the plaintiffs left the plumbing fixtures in the house, with the understanding that they would be removed at a later date. The trial testimony revealed that a third defendant, the subsequent tenant after the plaintiffs failed in their purchase of the house, converted the plumbing fixtures, and attached them to the house. Concerning the defendant/owners, the issue was whether there was an implied contract to buy the fixtures. The defendant/owners had not converted the fixtures, nor authorized the conversion. Even though they profited from the conversion, the Court found there was no

1. This Court explained in *Conkling's Estate v. Champlin,* 193 Okla. 79, 141 P.2d 569, 570 (1943), that an implied contract involves an implication of fact in contrast with a quasi or constructive contract involving an implication of law. In the constructive contract, the agreement is a mere fiction, imposed to adapt the case to a

given remedy. The implied contract involves a fact legitimately inferred. In the constructive contract intention is disregarded, but intention is ascertained and enforced in an implied contract. For a constructive contract the duty defines the contract. For an implied contract the contract defines the duty.

way to infer a contract against them. The Court further found that if a judgment were to go against the defendant/owners, they might lose this property through no fault of their own. They had expressly said they would not take the fixtures offered to them by the plaintiffs. An implied contract would have gone against this express declaration.

■ An express contract excludes the possibility of an implied contract of a different or contradictory nature. *Fox v. Cities Service Oil Co.*, 201 Okla. 17, 200 P.2d 398, 400 (1948). In *Fox*, the plaintiffs leased land to the defendant. The terms of the lease permitted the lessee to use the premises for any lawful purpose, including, but not limited to construction of ponds, dams, storage tanks, buildings, railways. The terms also included the right to remove any of these structures or fixtures. When the lease expired, the defendant removed its machinery, buildings and improvements, leaving twenty large concrete abutments and concrete foundations, and seven large slabs of concrete. There were portions of fence posts that had been cut off, fences, ditches and holes, embankments, dikes and dams used in connection with a gas lift plant, garbage pits, large holes, and dikes and dams not used in connection with the plant operations. The plaintiffs alleged that there was an implied covenant that the defendant would care for the leased land so as not to damage or injure it, and that at the termination of the lease the land would be returned to the plaintiffs in the same condition as it was prior to the occupancy. The Court found that the lease terms covered the alleged terms of the implied covenant. The Court observed that the lease contemplated definite changes in the topography of the land by the lessee's use. The rights and duties of the lessee upon termination of the lease were provided by the contract. The Court held that there was nothing in the lease that obligated the lessee to remove what had been left by the defendant.

The rule is the same in other jurisdictions; if an express contract between parties is established, a contract covering the identical subject cannot be implied, because *an implied agreement cannot coexist with the express contract.*[2] In *Triangle Mining Co. v. Stauffer Chemical Co.*, 753 F.2d 734 (9th Cir.1985), the defendant had terminated a mining contract with the plaintiffs in accordance with an express provision in the agreement. Because some of the circumstances had changed since the agreement was originally written, the plaintiffs argued that the agreement contained an implied covenant of good faith to limit the exercise of the express, unambiguous discretionary power of termination. The Ninth Circuit discussed the circumstances where implied covenants of good faith were applicable, and decided that under the facts of the case, there was no implied covenant of good faith. No special element of reliance or unequal bargaining existed. The court concluded that the clause was enforceable, and that under those circumstances, the plaintiffs could not recover on an implied contract. *Triangle Mining Co.*, 753 F.2d at 742.

In *Hinson v. Cameron*, 742 P.2d 549, 554 (Okla.1987), we acknowledged factors that other jurisdictions have used to evaluate whether an implied contractual right to job security exists:

a) evidence of some separate consideration beyond the employee's services to support the implied term; b) longevity of employment; c) employer handbooks and policy manuals; d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices; and e) promotions and commendations.

■ Implied terms may also affect a teacher's procedural rights in continued employment. In *Miller v. Independent School District No. 56*, 609 P.2d 756 (Okla.1980), we found that a teacher was entitled to written notice of the reasons for nonrenewal of her employment contract. We held that a policy statement which was adopted by the board of education had become part of the teacher's contract—by implication—even though the policy statement was adopted subsequent to

---

**2.** "An action does not lie on an implied contract where there exists between the parties a valid express contract which covers the identical sub-

ject matter." *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

the effective date of the employment contract.[3]

The issue has also been addressed in *Stern v. Board of Regents*, 841 P.2d 1168 (Okla.Ct. App.1992), where the Court of Appeals held that a probationary professor did not have a protected interest in obtaining tenure, where the university's faculty handbook contained no objective standards conferring automatic tenure, nor any suggestion that tenure would be withheld only for cause. The Court of Appeals emphasized the subjective nature of tenure decisions, and found that the professor's reliance on a tenure award was unreasonable.

 In applying these cases to the facts provided this Court by the federal district court, where a written formal tenure policy exists, and the court finds that policy constitutes an express contract, a university professor cannot have a legitimate claim to tenure pursuant to an informal, unwritten tenure policy. The informal unwritten tenure policy would appear to be, at best, an implied-in-fact contract, since there are no express terms between the parties. The plaintiff has the burden to present evidence to establish an implied-in-fact contract. If the written formal tenure policy is found to be an express contract, then it controls, because it is settled in Oklahoma contract and employment law that if an express contract between parties is established, a contract covering the identical subject cannot be implied, because an implied agreement cannot coexist with the express contract.

CERTIFIED QUESTION ANSWERED.

HODGES, LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J. and OPALA, concur in result.

---

**3.** *See also Vinyard v. King*, 728 F.2d 428, 432 (10th Cir.1984) (holding that written employee handbook created a property interest in continued employment, where handbook said that permanent employees would not be dismissed without cause).