SIMPSON PROPERTIES, INC., Appellee,

v.

OEXCO, INC., Appellant.

No. 84899.

Court of Appeals of Oklahoma,
Division No. 3.

April 9, 1996.

Roger O. Housley, Pence & Housley, Norman, for Appellee.

Andrew M. Coats, Gary C. Rawlinson, Fred R. Gipson, Crowe & Dunlevy, Norman, for Appellant.

## OPINION

ADAMS, Vice–Chief Judge:

For a number of years, Appellant Oexco, Inc., has been engaged in exploration and production of oil and natural gas. In the course of its business, it acts as the operator of numerous oil and gas wells and engages the services of various independent contractors to perform services on wells which it operates. From 1984 to 1992, Oexco engaged Coot Simpson Construction Company to construct surface locations and perform other work on various Oexco drilling sites. On most of the projects, Appellee Simpson Properties, Inc. (Simpson), furnished material such as gravel, top soil, sand, and clay at the request of the construction company but billed Oexco directly. Simpson and the construction company shared principal officers, offices, and employees during the period in question.

Prior to September 1985, Simpson did not include interest on unpaid invoices as part of its charges for materials furnished to Oexco and other operators. However, after that date its invoices contained a provision stating "INVOICE AMOUNT SUBJECT TO 1.50% FINANCE CHARGE FROM DATE OF INVOICE IF NOT PAID WITHIN 30 DAYS." [1] Oexco continued to do business with Simpson, but never paid any finance charge on subsequent invoices which were paid later than 30 days after the invoice date. However, Oexco did eventually pay all of the principal charges for the materials furnished.

Approximately one year after Simpson last furnished material to an Oexco site in 1992, Simpson sued Oexco to recover the finance charges. After a non-jury trial, the trial court entered judgment in favor of Simpson for $13,534.94 and ultimately awarded Simpson costs and attorney fees of $6,610.91 as the prevailing party. After the trial court denied its motion for new trial, Oexco appealed.

■ As its principal basis for reversal, Oexco argues the record contains insufficient evidence to support the trial court's determinations that the parties had an open account and an implied agreement concerning the finance charge. In addressing this argument in this case of legal cognizance tried to the court without a jury, our task is to examine the record only to determine whether there is any evidence reasonably supporting the trial court's findings and judgment. *Epperson v. Halliburton Company*, 434 P.2d 877 (Okla.1967).

■ With regard to the existence of an open account, Oexco argues the evidence is consistent only with the conclusion that the parties had a series of individual contracts because, as operator, Oexco was acting, at least in part, for a different group of working interest owners on each well. For purposes of the issues in this appeal, whether the parties' dealings are treated as a series of separate contracts or as an open account is immaterial.[2]

■ Oexco and Simpson agree that there was no evidence of an "express" contract concerning the payment of finance charges. Rather, Simpson's claim was premised upon the parties' conduct and "custom" of the oil and gas industry. Simpson introduced evidence that beginning in September 1985, its invoices bore the notation quoted above. In addition, after that date, Simpson annually sent all of its regular customers, including

1. Although this notation was all in capital letters, like all other information on the pre-printed form, its typeface was identical to most of the other pre-printed text.

2. For purposes of the implied contract theory neither party has demonstrated how the existence of an open account is important. It is material to Simpson's view of the law with regard to the statute of limitations issue discussed later. Since we reject Simpson's view, we need not concern ourselves with whether the parties maintained an open account.

Oexco, a price list which included a similar provision. Simpson also calculated and included the finance charge as a separate item on all periodic statements sent to Oexco after September 1985.

Oexco made all payments to Simpson with reference to specific invoices. As issued, the invoiced amount did not include finance charges because no finance charge had yet accrued. Oexco's payments covered only the invoiced amounts and did not include any finance charge, although most of the invoices were not paid until after thirty days. Simpson continued to show the finance charges on its periodic statements, although it never made formal demand for payment or instituted legal action to collect these amounts until it filed this case. Nevertheless, despite knowledge that Simpson's normal charges for its materials included the finance charge provision, Oexco continued to order materials from Simpson and, other than failing to pay the finance charges, never indicated it had any objection to this provision.

■ As noted in *Ray F. Fischer Co. v. Loeffler–Green Supply Co.*, 289 P.2d 139, 140 (Okla.1955):

An "implied contract" is a contract implied in fact, or, in the proper sense, one which arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.

As distinguished from an express contract, which is proved by an actual agreement, an "implied contract" arises from the implication that a "party did make such an agreement as, under the circumstances disclosed, he ought in fairness to have made." *Ray F. Fischer Co.*, 289 P.2d at 141. As noted further in *Ray F. Fischer Co.*, we can make only those implications which are reasonable de-

ductions from all the circumstances and actions of the parties.

Oexco argues that *Ray F. Fischer Co.* actually supports its position because the party being charged interest in that case at one point paid a portion of the interest charge. Although the payment of part of the interest was the significant factor cited by the Court, nothing in that opinion suggests that other conduct could not support an implied contract or that a contract could not be implied absent such a payment.

■ By the time Oexco made the first request for materials for which we allow Simpson to recover, sometime in June of 1988, Oexco had already received at least fifty invoices from Simpson which contained the finance charge provision, in addition to numerous periodic statements including the finance charge in the amount due, and price lists which also included the finance charge information. Thereafter, Oexco engaged Simpson's services over two hundred more times. It is not unreasonable to infer that a customer agrees to pay the price the vendor charges for an ordered item, including credit arrangements, where the customer orders the goods from the vendor knowing the vendor's terms and makes no attempt to negotiate a different arrangement.[3]

Our conclusion is buttressed by the general provisions of 12A O.S.1991 § 2–207 and note 5 of the Uniform Commercial Code Comments to that section. Between merchants, as that term is defined in 12A O.S. 1991 § 2–104, additional terms included in a written confirmation of a contract which do not materially alter the offer become part of the contract unless an objection is made within a reasonable time. Note 5 of the comment lists "a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for" as an example of a clause which "involve[s] no element of unreasonable surprise and which therefore [is] in-

---

**3.** In fact, Oexco's principal testified that from the time he began handling the accounting in 1992, after Simpson no longer provided materials to Oexco, his practice was to contact vendors who charged interest on accounts older than thirty days to object to the practice and seek an agreement that no interest would be charged. If a vendor did not agree to drop the interest, then Oexco would not use the vendor further.

corporated in the contract unless notice of objection is seasonably given."[4]

■ Oexco contends that Simpson's failure to take formal steps to collect the finance charge, despite its consistent practice of including the finance charge in all statements of the balance due, supports the conclusion that Simpson waived this provision of any implied contract. Whether the trial court could have so concluded is not material to our decision here. Our standard of review requires us to affirm the findings and determinations which the trial court *did* make if there is any evidence reasonably supporting those findings and determinations. Just as the issue of whether there were implied contracts to pay the finance charge presented a fact question for the trial court to decide, the waiver issue presented a fact question as well. The trial court heard the evidence on this issue and must have concluded no waiver occurred.[5] The record contains evidence which reasonably supports the conclusion that an implied contract or contracts existed for the payment of the finance charge outlined on Simpson invoices, periodic statements, and price lists. Insofar as the trial court generally allowed recovery for those charges, its judgment is affirmed.[6]

■ Even if implied contracts to pay the finance charge existed, Oexco argues, the trial court erroneously allowed recovery for claims which were barred by the statute of limitations.[7] Oexco contends all claims for finance charges which accrued prior to June 12, 1990, three years prior to the date Simpson filed its petition, are barred by the statute of limitations contained in 12 O.S.1991 § 95 relating to contracts not in writing.

Simpson contended at trial and on appeal that "an open account establishes a new and independent cause of action, *superseding and merging* the antecedent cause of action" (emphasis in original), citing *Webster Drilling Co. v. Sterling Oil of Oklahoma, Inc.*, 376 P.2d 236 (Okla.1962). In addition, Simpson continues to argue that the statute of limitations begins to run from the date of the last payment on an open account, citing *Electric Supply Co. v. Garland*, 188 Okl. 21, 105 P.2d 758 (1940). According to Simpson, all of the finance charges are recoverable because the last delivery of goods under the open account and the last payment on the account oc-

4. The application of § 2–207 was not raised in the trial court as a basis for concluding the finance charge provision was part of the contracts. Therefore we *do not* premise our decision on its provisions and need not determine whether it applies. The dissent's apparent suggestion that we are being disingenuous ignores the fact that we do not conclude that the finance charge became part of the contracts as a matter of law, as would be the case if § 2–207 were applied, but instead conclude the evidence presented a question of fact for the trial court to decide. Section 2–207 is relevant to our discussion only insofar as the principles underlying its provisions indicate what might reasonably be inferred from the conduct of "merchants."

5. If we understand the dissent correctly, it would hold that waiver was established *as a matter of law* because Simpson took no formal steps to collect the interest, such as a demand letter or filing suit, and accepted payment of less than the amount owed. This conclusion gives no credence to the evidence that every periodic statement included the calculated and accrued finance charge and gave no indication that Simpson intended to drop the charge. Accepting checks for amounts which were admittedly owed but for less than the amount owed does not *inevitably* lead to a conclusion that the payee

agreed to waive the difference. *See Polin v. American Petrofina Company of Texas*, 589 P.2d 240 (Okla.App.1978).

6. Oexco's brief might be read as raising one additional argument on the issue of Simpson's right to recover interest. In discussion limited to a footnote, Oexco suggests Simpson waived its claim to interest by accepting full payment on the principal, citing 12 O.S.1991 § 8. However, Oexco did not raise this issue in its new trial motion, and we may not consider that argument. *Reeves v. Agee*, 769 P.2d 745 (Okla.1989); 12 O.S.1991 § 991(b).

7. In this same connection, Oexco argues it was unfairly surprised by the trial court's decision to allow Simpson to amend its damage request to include finance charges on all the invoices, dating back to September 1985, which resulted in increasing the amount of Simpson's claim by approximately $7,000. According to Oexco, the failure to previously allege such facts prevented Oexco from raising a statute of limitations defense prior to trial. However, the trial court allowed Oexco to raise that defense, and in light of our decision on the limitations issue any "surprise" was not prejudicial and therefore not "unfair."

curred within the relevant statutory time prior to June 12, 1993.

 First we note that the holding in *Webster* upon which Simpson relies involved an "account stated" as opposed to an "open account." The *Webster* Court noted that an "account stated" is a new agreement of the parties by which they have agreed that the balance due shown on an account is in fact the amount due and owing. Such an agreement may be distinguished from an open account in which the parties may use a running account to settle several transactions over an extended period. Moreover, the statute of limitations commences to run on each item of an open account at the time that charge is entered in the account. *Pitts v. Walker*, 188 Okl. 17, 105 P.2d 760 (1940) and *Harvey v. Frizzell*, 203 Okl. 424, 222 P.2d 752 (1950).

 The statute of limitations may be revived as to the entire account, as in *Garland*, if a payment is made within the limitations period prior to commencement of the action *and* is made *with the intent that it apply on the "balance due."* A payment made on a *particular item* of the account within the limitations period prior to commencement of the action *does not* revive the statute of limitations as to the entire account. *Pitts*, 105 P.2d at 763 and *Harvey*, 222 P.2d at 754. On this record, it is uncontroverted that every Oexco payment was intended to be applied to a specific invoice or invoices which were identified on the check and that these payments were so credited by Simpson. Under the applicable law and the undisputed facts of this case, whether these parties' dealings are treated as a series of independent contracts or an open account, the statute of limitations began to run as to each separate transaction from the date it was first invoiced.

 However, we do not agree with Oexco that a three-year statute of limitations applies to Simpson's claims. According to *Sesow v. Swearingen*, 552 P.2d 705 (Okla. 1976), where the open account results from sales of goods, as here, the five-year statute

of limitations contained in 12A O.S.1991 § 2–725 is applicable rather than the three-year statute of limitations for contracts not in writing under 12 O.S.1991 § 95. The trial court should have limited Simpson's recovery to finance charges on invoices issued on or after June 12, 1988.

Each party introduced an exhibit itemizing each invoice, showing the date it was issued and ultimately paid. Both exhibits also calculated the total finance charge on each invoice which should have been paid as to each invoice, assuming there was an agreement to pay the finance charge. Because of what appear to be differences in calculating the finance charge, Simpson's exhibit showed the total unpaid finance charge to be $16,606.39, but Oexco's exhibit showed that figure to be $13,534.94. The trial court based its judgment on Oexco's exhibit, and Simpson does not argue that the trial court should not have done so. Using the calculations in Oexco's exhibit, we can determine that the total amount of unpaid finance charges on invoices issued on or after June 12, 1988, was $10,-127.10. Therefore, the judgment in favor of Appellee must be reduced to that figure. *See Gallaspy v. Warner*, 324 P.2d 848 (Okla. 1958) and *Kunkel Plumbing and Heating Company v. Estes*, 346 P.2d 185 (Okla.1959).

 Finally, Oexco concedes that the prevailing party in this case was entitled to recover reasonable attorney fees and costs, but argues that the trial court's award to Simpson must be completely set aside if we determine there was no agreement to pay the finance charge, and should be modified if we determine the agreement existed but the statute of limitations barred part of Simpson's claims. Based upon our earlier discussion we need only address the latter contention.

 Oexco argues that a reduction in Simpson's recovery of the size outlined in its brief would require a reduction in the amount of the attorney fees in order to make the attorney fees award bear a reasonable relationship to the amount of the actual judgment.[8] We agree that the amount of the

8. Based on the application of a three-year statute of limitations and its argument that the finance

charge should be limited to six per cent annually

prevailing party's recovery is *one* factor to be considered in awarding reasonable attorney fees. *See Arkoma Gas Company v. Otis Engineering Corporation,* 849 P.2d 392 (Okla.1993). Oexco's argument might have substantial merit if we had reduced Simpson's recovery to the level argued by Oexco. However, we cannot conclude that reducing Simpson's recovery from approximately $13,000 to approximately $10,000 requires a re-examination of an attorney fees award of approximately $6,000 on the theory that award bears no "reasonable relationship to the amount of the actual judgment." The trial court's award of attorney fees and costs is affirmed.

Insofar as it found Oexco generally liable for finance charges assessed in accordance with the notice contained on Simpson's invoices, periodic statements, and price lists, the trial court did not err. However, the damages awarded by the trial court are excessive in that they allow recovery for claims which are barred by the statute of limitations. The trial court's judgment is modified to reflect an amount of $10,127.10, and as so modified, the judgment is affirmed. The trial court's award of attorney fees and costs is also affirmed.

AFFIRMED AS MODIFIED.

BUETTNER, J., concurs.

HANSEN, P.J., dissents with separate opinion.

HANSEN, Presiding Judge, dissenting:

I dissent. Simpson brought this action to recover interest money from Oexco for rock and gravel materials furnished by Simpson for Oexco's construction of oil and gas well surface locations. The trial court determined there was no express contract between the parties, that the transactions between the parties amounted to an "open account" and that interest on the account was implied by law. The majority appears not to disagree with these findings. The question is whether there is evidence reasonably supporting the trial court's determination of an implied contract *to pay interest* on that account. In my view, there is not.

An agreement, in this case to pay interest, which is implied in fact is one whose existence and terms are manifested by conduct. 15 O.S.1991, § 133. The existence of an implied agreement is a matter of law. *Mead Bros. v. State Industrial Commission,* 144 Okl. 279, 291 P. 571 (1930). Implied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract. *Jones v. University of Central Oklahoma,* 910 P.2d 987 (Okla.1995). In *Ray F. Fischer Co. v. Loeffler–Green Supply Co.,* 289 P.2d 139 (Okla.1955), an implied-in-fact contract case, the Supreme Court noted that the nature of express and implied contracts are the same in that both express contracts and contracts implied in fact are founded on the *mutual agreement* of the parties. Here there was no such mutual agreement to pay interest on the account.

The majority concludes it is *reasonable to infer* from Oexco's conduct that Oexco *agreed* to pay a finance charge on past-due invoices based on the principles underlying 12A O.S. 1991, § 2–207 and note 5 to said section. I disagree. Section 2–207 was not raised to the trial court and the majority acknowledges this. Further, Simpson mentions § 2–207 only once in its appellate brief in support of its contention the assessment of finance charges on accounts is a common practice in our society. Although the majority states it does not premise its decision on § 2–207 and it need not determine whether such section of law technically applies, that is precisely what it does.

Section 2–207 is intended to deal with two situations: one is the written confirmation, where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda which contain the terms of the agreement and adding terms not discussed, and two, is an offer and acceptance, in which a wire or letter expressed and intended as an accep-

under 15 O.S.1991 § 266, Oexco concludes

Simpson could recover no more than $1,266.02.

tance or the closing of an agreement adds further minor suggestions or proposals. See Comment 1 to this Section. Section 2–207 provides the additional terms are to be construed as proposals for *addition to the contract* and in fact become a part of the contract unless under subsection (c), notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Section 2–207 thus applies to a situation where a contract already exists or where an acceptance .of an offer contains additional terms. However, the trial court determined "[t]here were *no* express contracts between the parties and the transactions between the parties amounted to an open account".

The majority opinion suggests the parties' relationship is contractual. Footnote 4 of the majority opinion provides in part: "However, in light of the fact that both of the parties *to this contract* were actively engaged in oil and gas related businesses and might be said to be 'merchants', the principles underlying § 2–207 may be indicative of what might reasonably be inferred from the parties' conduct." Apparently, the majority has concluded that the invoices, price lists and/or periodic statements were written confirmations of *existing contracts* and that the finance charge was a term added by Simpson to which Oexco should have objected. Because Oexco continued to use Simpson's services after being sent numerous invoices which contained the finance charge language, the majority decides it is not unreasonable to infer that Oexco *agreed* to pay the finance charge.

I question the applicability of § 2–207 to the facts of this case. Even assuming for the sake of argument that § 2–207 of the Uniform Commercial Code applies and that it could be implied that finance charges became a part of the parties' agreement, under the facts of this case, Simpson waived, by its silence, any right it had to collect the finance charge from Oexco.

If this Court intends to apply the principles of the Uniform Commercial Code to this case, even if not raised below, it should look to other sections of the U.C.C. for guidance as well. Under the Uniform Commercial Code, an "agreement" means "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course. of performance as provided for in the Uniform Commercial Code (Sections 1–205 and 2–208 of this title)." 12A O.S.1991, § 1–201(3). 12A O.S.1991, § 2–208 provides:

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

(2) The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (Section 1–205).

(3) Subject to the provisions of the next section on modification and waiver, *such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance.*

(Emphasis supplied).

As noted in Comment 1 to § 2–208, the parties themselves know best what they have meant by their words of agreement and *their action under that agreement is the best indication of what that meaning was.* Unlike the defendant in *Fischer, supra,* Oexco has uncontrovertedly never paid any interest to Simpson. Over the eight-year period of the parties' business relationship, Oexco made payments to Simpson generally from 90 to 120 days after invoice. On its checks, Oexco noted the invoice numbers to which the payment corresponded and the payments never included any interest. Simpson cashed these payments and credited them to Simpson's account, never objecting to Oexco's failure to pay interest. Even though Simpson's invoices and statements contained language

which provided for the assessment of interest after 1985, the evidence shows Simpson *never once demanded interest from Oexco during the seven years from September, 1985 to July, 1992, and continued to accept checks from Oexco which only covered the invoiced amounts.*

The majority considers only the evidence of Oexco's failure to object to the finance charge terms and ignores the evidence of Simpson's seven-year failure to insist upon performance. The *plaintiff* has the burden to present evidence to establish an implied-in-fact contract, which as noted, rests on the parties' *mutual* agreement. *Jones v. University of Central Oklahoma,* 910 P.2d 987, 991 (Okla.1995). Under § 2–208 of the U.C.C., a certain course of performance can result in the waiver of an express term in an agreement. *National Livestock Credit Corporation v. Schultz,* 653 P.2d 1243 (Okla.App. 1982). Simpson did not meet its burden of proof to present evidence to establish an implied in fact contract. The evidence in this case clearly shows a course of performance by Simpson wherein it has waived any right it may have had, to insist upon performance by Oexco of the interest provision contained in the invoices. I would reverse the trial court's judgment. Accordingly, I dissent.